**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: CROP INPUTS ANTITRUST LITIGATION | )<br>)<br>)<br>)<br>) | 4:21-MD-2993-SEP<br><br>**ALL CASES** |

## DEFENDANTS'[1] MEMORANDUM IN SUPPORT OF MOTION TO STAY DISCOVERY

---

[1] Bayer CropScience LP, Bayer CropScience Inc., BASF Corporation, Corteva Incorporated, Pioneer Hi-Bred International, Syngenta Corporation, Cargill, Incorporated, Univar Solutions, Incorporated, Winfield Solutions, LLC, CHS Incorporated, Federated Co-operatives Limited, GROWMARK, Inc., GROWMARK FS, LLC, Nutrien Ag Solutions, Incorporated, Simplot AB Retail Sub, Incorporated, and Tenkoz, Inc. (collectively, "Defendants").

This MDL is in its infancy, and it does not make sense to begin discovery before the Court has an opportunity to determine whether any claims in the consolidated amended complaint ("CAC") will survive a Rule 12 motion. This antitrust case involves over a dozen parties across all levels of the distribution system and in multiple product and geographic markets. If allowed to go forward, discovery will be burdensome, time-consuming, and expensive. Consistent with *Twombly* and other authorities, the plausibility of Plaintiffs' claims should be tested first.

The Supreme Court strongly cautions *against* early discovery in antitrust cases, before a complaint has been tested for plausibility. In light of the particularly costly nature of antitrust discovery, "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558–59 (2007) (quotation omitted). That is especially true here, where Plaintiffs allege coordination among 17 Defendants across three levels of distribution—but do not allege the involvement of other significant market participants fully capable of supplying the allegedly boycotted platforms. To obtain any discovery, Plaintiffs must first overcome major hurdles to adequately plead their array of federal antitrust, state antitrust and consumer protection, and RICO claims. For their antitrust and consumer protection claims to survive, Plaintiffs must plausibly allege a conspiracy. This requires a showing that Defendants colluded with a "unity of purpose or a common design and understanding" despite contradictory allegations that are consistent with lawful independent conduct.[2]

As of this writing, Plaintiffs have not yet filed their CAC, but if it bears any resemblance to earlier complaints in the transferred actions, it will contain an amalgam of implausible claims

---

[2] For a RICO claim to survive, Plaintiffs will be required to plausibly allege a pattern of racketeering, the existence of an enterprise, and reliance. Plaintiffs also will face Rule 9(b)'s demanding pleading standard as to any fraud-based civil RICO claim.

with multiple fatal pleading defects. Thus, there is a high probability that this Court will grant Defendants' motions to dismiss, ending the case and obviating the need for discovery. Even if the Court grants the motions in part, its ruling likely will narrow the issues and claims in the case and thus the scope of discovery. Either way, the parties will benefit from receiving the Court's ruling before embarking on costly and protracted discovery. A brief stay will spare hardship to Defendants, cause no prejudice to Plaintiffs, and allow the Court and the parties to conserve resources.

## PROCEDURAL HISTORY

Pursuant to the Court's August 20, 2021 order, Plaintiffs will file their CAC by September 17, 2021. ECF No. 61. Defendants' motions to dismiss are due November 10, 2021. Plaintiffs' oppositions are due December 20, 2021, and Defendants' replies are due January 19, 2022. *Id.*

As directed by the Court at the initial status conference on August 9, 2021, the parties met and conferred on several occasions in an effort to reach an agreement on the timing of the start of discovery. *See* ECF No. 49. Despite good faith negotiations, the parties were unable to agree. Defendants proposed that, until a ruling on the motions to dismiss, discovery be limited to negotiation of a protective order and ESI protocol (both of which are needed before discovery can commence, involve complex issues, and may require Court resolution of any areas of disagreement). Although maintaining their position that no discovery is appropriate, Defendants offered (solely for compromise) that the parties exchange Rule 26 Initial Disclosures. Plaintiffs rejected these proposals. Plaintiffs insisted that Defendants agree to produce to Plaintiffs materials previously produced to the Canadian Competition Bureau ("CCB") by Canadian companies, nearly all of whom are not parties here, and the Federal Trade Commission ("FTC") in exchange for any stay of discovery until after a ruling on the motions to dismiss. For the reasons set out

below, Defendants did not agree to that request.

## LEGAL STANDARD

"A district court has broad discretion to stay proceedings when appropriate to control its docket." *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 816 (8th Cir. 2006). That discretion "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Physicians Home Health Infusion, P.C. v. UnitedHealthcare of the Midwest, Inc.*, No. 4:18-cv-01959, 2019 WL 4644021, at *2 (E.D. Mo. Sept. 24, 2019) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

The issuance of a stay of discovery depends on the circumstances of the particular case, but courts commonly consider: "(1) whether the movant has shown a likelihood of success on the merits of the dispositive motion; (2) hardship or inequity to the moving party if the matter is not stayed; (3) prejudice to the non-moving party [if the matter is stayed]; and (4) the conservation of judicial resources." *Physicians Home Health*, 2019 WL 4644021, at *3 (quoting *Dufrene v. ConAgra Foods, Inc.*, No. 15-cv-2796, 2016 WL 10651947, at *2 (D. Minn. Apr. 7, 2016)); *see also In re: Pre-Filled Propane Antitr. Litig.* ("*Propane*"), No. 14-md-02567, 2015 WL 11022887 (W.D. Mo. Feb. 24, 2015).[3] Here, the relevant factors weigh strongly in favor of a stay.

## ARGUMENT

1. **The Court Should Stay Discovery Pending Its Rulings on Defendants' Forthcoming Motions to Dismiss.**

*Twombly* recognized the unique burdens of antitrust discovery, cautioning that courts

---

[3] The first prong may be inapplicable because the Court may not wish to assess probability of success until the briefing on motions to dismiss has at least started (if not been completed). *See Propane*, 2015 WL 11022887, at *2 (internal quotations omitted) (setting out three-factor test including "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved").

3

should be wary of the "extensive scope" and "unusually high cost of discovery" in such cases. *Twombly*, 550 U.S. at 558–59; *see also Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 543 (8th Cir. 2015) (applying *Twombly* to avoid subjecting defendants to the "discovery swamp" of antitrust litigation) (citations omitted); *see generally* Manual for Complex Litigation, Fourth § 30 (describing extensive scope of discovery in antitrust cases). The Supreme Court admonished that "the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." *Twombly*, 550 U.S. at 558 (internal quotation omitted).

Accordingly, courts in this circuit and others *routinely* stay discovery in antitrust cases while motions to dismiss are pending or forthcoming. *E.g.*, *Propane*, 2015 WL 11022887, at *2; *In re: Wholesale Grocery Prods. Antitr. Litig.*, No. 09-md-2090, 2010 WL 11469883 (D. Minn. Mar. 3, 2010); *Nexstar Broad., Inc. v. Granite Broad. Corp.*, No. 1:11-CV-249, 2011 WL 4345432, at *3 (N.D. Ind. Sept. 15, 2011) (staying discovery pending motion to dismiss decision, noting, "[c]ritically, this is an antitrust case, which directly invokes the Supreme Court's concerns in *Twombly* about burdensome and expensive discovery"). Each of the factors commonly considered weighs heavily in favor of the Court's staying discovery until it determines whether any of Plaintiffs' claims will survive the forthcoming motions to dismiss.

  a.     *Any Discovery Would Be Burdensome to Defendants and the Court.*

The law is clear: "[a] plaintiff must adequately plead a claim before obtaining discovery, not the other way around." *In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*, No. 08-1905, 2009 WL 294353, at *2 (D. Minn. Feb. 5, 2009), *aff'd*, 623 F.3d 1200 (8th Cir. 2010); *see also id.* (holding that plaintiffs "are not entitled to 'conduct a fishing expedition for discovery'")

(quoting *Oreman Sales, Inc. v. Matsushita Elec. Corp. of Am.*, 768 F. Supp. 1174, 1180 (E.D. La. 1991)). Per *Twombly*'s directive, there should be no discovery in this case until the Court determines that Plaintiffs can plead a viable claim. Any discovery would fall disproportionately on Defendants and likely would require the needless expenditure of Court and party resources to resolve inevitable disputes and comply with any resulting discovery directive, even to respond to Plaintiffs' proposal for productions made to the CCB and FTC.

With respect to the CCB documents, for example, many of the documents that Plaintiffs seek were not produced by Defendants in this case, but rather by their foreign affiliates. This raises fact-specific questions about whether such documents are in the possession, custody, or control of Defendants here, questions that the parties will need to brief as relates to each Defendant's unique circumstances, and the Court will need to address and resolve before any production may proceed. Relatedly, Defendant Federated Cooperatives Limited ("FCL")—the only Defendant that actually produced documents to the CCB—will challenge personal jurisdiction here because it is a Canadian cooperative that does no business in the United States. The Court will thus need to resolve the threshold question whether it has jurisdiction over FCL before it should be required to produce documents.[4]

Thus, even limited discovery is premature and would impose an undue and likely avoidable burden on Defendants and the Court. Additionally, before discovery can proceed, an ESI order

---

[4] Requiring a Defendant to turn over documents in discovery when it is not subject to personal jurisdiction is surely inequitable and prejudicial. *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-CV-00772, 2015 WL 1600768, at *1 (D. Nev. Apr. 8, 2015) ("[I]n the context of a pending motion to dismiss challenging personal jurisdiction, courts are more inclined to stay discovery because it presents a 'critical preliminary question.'") (citation omitted); *Steinbuch v. Cutler*, 518 F.3d 580, 590 (8th Cir. 2008) (affirming stay of discovery because plaintiff could not make a *prima facie* showing of personal jurisdiction). And, "the Supreme Court has cautioned federal courts to exercise special vigilance to protect foreign litigants from unnecessary. . . discovery." Manual for Complex Litigation, § 11.494.

governing production specifications and a protective order governing confidentiality issues must be entered. Both documents will require negotiation, documentation, and potentially Court involvement, but this work could be accomplished during the pendency of the motions to dismiss.

       b.    *A Discovery Stay Poses No Prejudice to Plaintiffs.*

Plaintiffs filed their actions several years after the alleged initial anticompetitive behavior—which undermines any argument that a limited delay in discovery would pose undue prejudice. *See Propane*, 2015 WL 11022887 ("Any delay Plaintiffs would face from a stay is minimal compared to the delay in filing the present case."). Likewise, there is no risk of losing evidence during a stay, as each Defendant has an appropriate litigation hold in place. *See* ECF No. 75, at 47:14–25; *Raimo v. Washington Univ. in St. Louis*, No. 4:20-cv-00634, 2021 WL 243559, at *1 (E.D. Mo. Jan. 25, 2021) (finding low "risk of lost evidence" and no unfair prejudice). Accordingly, Plaintiffs can demonstrate no immediate need for discovery.

       c.    *A Stay Will Enhance Efficiency for the Court and Parties.*

A stay will enhance efficiency by also reducing the cost and burden of unnecessary discovery and discovery disputes as to allegations and claims that the Court may dismiss from the case. There is "good cause" for a stay where "[i]t is likely that the Court's ruling on the dispositive motions will narrow the issues in this case and obviate the need for some discovery." *Riehm v. Engelking*, No. 06-cv-293, 2006 WL 2085404, at *2 (D. Minn. July 25, 2006); *see also Propane*, 2015 WL 11022887, at *5 (stay justified where "at least some of Plaintiffs' claims may be appropriate for dismissal"). Based on filings to date, Defendants expect that there will be strong arguments for dismissal, including on *Twombly* and other grounds, particularly given the implausibly broad nature of the alleged conspiracy, the lack of specific factual allegations suggesting anything more than permissible unilateral conduct, and Plaintiffs' rampant use of improper group pleading, among myriad other defects. Thus, Plaintiffs' claims will likely be

dismissed in their entirety or substantially narrowed. The parties and the Court would benefit from the guidance afforded by a ruling on the motions to dismiss and the efficiencies created by staying discovery.

### 2.      The Stay Should Preclude Production of Government Documents.

Defendants expect Plaintiffs to urge the Court to compel production of documents previously produced to the CCB or FTC. In addition to the procedural problems with that position noted above, there is no substantive "government investigation" exception to *Twombly*'s directive that discovery requires a plausible complaint.

At the outset, the government investigation documents are largely—if not entirely— irrelevant to this case. In earlier complaints, Plaintiffs refer to an investigation by the CCB of "Federated Co-operatives Limited, Cargill Limited, Winfield United Canada ULC, Univar Canada Ltd., BASF Canada Inc., Corteva Inc. and/or its affiliates, and Bayer CropScience Inc. and its wholly-owned subsidiary Monsanto Canada ULC." *See, e.g.*, *Handiwerk v. Bayer*, No. 4:21-cv-748-SEP (D. Minn. Apr. 21, 2021), ECF No. 14, at ¶ 89 (*Handiwerk* Compl.). But again, *only one* of these entities, FCL, is a named Defendant here, and Plaintiffs fail to allege that FCL has engaged in *any* domestic conduct.[5] In other words, the producing companies in Canada, with one exception, are different non-party entities. Furthermore, the CCB investigation concerns the acquisition of a single Western Canadian brick-and-mortar retailer by non-party Farmers Business Network (FBN)'s Canadian subsidiary. Moreover, the mere investigation of a possible foreign conspiracy does not provide a basis for taking discovery of matters being investigated there. *See In re Chocolate Confectionary Antitr. Litig.*, 801 F.3d 383, 403 (3d Cir. 2015) ("A conspiracy

---

[5] Canadian affiliates of Corteva are the entities included in the CCB investigation. The Bayer CropScience, Inc. referenced is a Canadian entity, and distinct from the U.S. entity of the same name that is a named Defendant and that has not produced documents to the CCB.

elsewhere, without more, generally does not tend to prove a domestic conspiracy."). Thus, any production of documents related to an unrelated Canadian investigation is unjustified in this U.S. litigation. *See United States v. Capitol Serv., Inc.*, 89 F.R.D. 578, 582 (E.D. Wis. 1981) (denying discovery of activities outside the alleged geographic market).

Plaintiffs' demand regarding the FTC investigation is likewise off the mark. At the August 9, 2021 status conference, Corteva's counsel represented that the FTC matter is unrelated to the claims in this case. ECF No. 75, at 55:5–8. As Corteva's SEC disclosure makes clear, the investigation concerns unilateral (and not concerted) conduct, primarily involving herbicides with certain identified ingredients and related products.[6] Plaintiffs' prior complaints simply alleged that the FTC is investigating Corteva without any other details that in any way connect the investigation to Plaintiffs' allegations. *See e.g.*, *Handiwerk* Compl. ¶ 12 ("FTC is likewise investigating anticompetitive conduct in the Crop Inputs market"). Other complaints simply state that the FTC investigation concerns "whether Corteva engaged in unfair methods of competition through anticompetitive conduct." *Id*. These complaints do not allege the FTC investigation concerns online platforms.

Moreover, the production of these materials would not be simple and cost-free as Plaintiffs appear to believe. Any Defendant ordered to produce documents from these government investigations would need to engage in a costly and time-consuming review of the materials for

---

[6] *See* Corteva Inc., Quarterly Report 62 (Form 10-Q) (Aug. 6, 2021), available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001755672/ad8e3859-c236-4819-9beb-825a49fc754d.pdf ("On May 26, 2020, Corteva received a subpoena from the Federal Trade Commission ('FTC') directing it to submit documents pertaining to its crop protection products generally, as well as business plans, rebate programs, offers, pricing and marketing materials specifically related to its acetochlor, oxamyl and rimsulfuron and other related products in order to determine whether Corteva engaged in unfair methods of competition through anticompetitive conduct.").

relevance and confidentiality.[7] *See Arrowpac Inc. v. Sea Star Line, LLC*, No. 3:12-CV-1180, 2014 WL 12618327, at *3 (M.D. Fla. Jan. 31, 2014) ("[E]ven where courts have ordered wholesale production of all DOJ materials, it was only after specific discovery requests were made and/or determinations were made that the materials were relevant and not privileged."); *Propane*, 2015 WL 11022887, at *3 (defendants "would not be able to simply hand over" documents without further review). This is the type of burden that *Twombly* seeks to avoid.

For similar reasons, other courts have declined to allow so-called "limited" discovery of government investigation documents. *In re: Pre-Filled Propane Tank Antitrust Litigation* is illustrative. There, the FTC filed a complaint "alleging that Defendants had restrained price competition because of the 2008 decision to decrease the fill level of the propane tanks." *Id*. at *2. In separate civil litigation, the *Propane* defendants sought to stay discovery until a decision was issued on their forthcoming motion to dismiss the operative complaint. *Id*. The plaintiffs opposed, seeking: "(1) a copy of the materials already produced to the FTC; (2) a copy of the discovery already produced by [d]efendants [in an earlier] case; and (3) the telephone numbers of [d]efendants' officers and employees." *Id*. The court stayed discovery *in full*, finding that the "[d]efendants would suffer hardship if they were required to sort through all of the discovery they previously produced [to the FTC] to insure its relevance and examine its confidentiality prior to ruling on their forthcoming motion to dismiss." *Id*. at *5. The court also found that the plaintiffs, like those here, would not be prejudiced by a stay, particularly since the alleged wrongful behavior had occurred several years before. *Id*. at *2–3.

---

[7] This assumes any Defendant could even be ordered to produce documents produced by a related but non-party company. *See, e.g.*, *Handi-Craft Co. v. Action Trading, S.A.*, No. 4:02-cv-1731, 2003 WL 26098543, at *5 (E.D. Mo. Nov. 25, 2003) (outlining multi-factored analysis courts must apply to determine whether party exerts sufficient control over related entities to obtain documents in discovery).

Similarly, in *In re: Wholesale Grocery Products Antitrust Litigation*, the plaintiffs sought government investigation documents, asking that defendants produce: "(1) all documents provided to the FTC in response to the FTC's investigation; (2) the FTC subpoena(s); and (3) all correspondence regarding the FTC's investigation and document subpoena(s)." No. 09-md-2090, 2010 WL 11469883, at *2. The plaintiffs contended that those particular documents were needed to respond to defendants' motions to dismiss. *Id*. The court disagreed, finding that no such discovery was needed to respond. *Id*. at *3. Additionally, because the plaintiffs sought documents already compiled and turned over to the government, there was "little to no risk that the[] document [would] be unavailable in the future." *Id*. Plaintiffs here also have no basis to demand that Defendants produce documents previously produced in government investigations, especially without a showing that such documents are relevant to this matter. Plaintiffs should not be relieved of their obligations under Rule 26, and "government investigation" documents should be subject to the requested stay.[8]

## <u>CONCLUSION</u>

This Court should heed the Supreme Court's warning in *Twombly* against allowing discovery in an antitrust case unless plaintiffs first state a plausible claim. The Court should grant Defendants' motion to stay discovery pending resolution of the motions to dismiss.

---

[8] During the meet and confer, Plaintiffs indicated that they intend to rely on cases like *In re Pork* or *In re Cattle* in opposing a stay. Their reliance is misplaced. Among other differences, those matters were at a more advanced stage. Also, neither *Pork* nor *Cattle* involved requests for documents from foreign investigations. In *Pork*, motions to dismiss were already filed, briefed, and argued, giving the court a sense of whether the antitrust claims were plausible. *See In re Pork Antitrust Litig.*, Case No. 18-cv-1776, 2019 WL 480518, at *1 (D. Minn. Feb. 7, 2019). And, in *Cattle*, the court found that the "majority" of government documents at issue were likely to be "highly relevant" to the case, alongside other factors justifying production. *In re Cattle Antitrust Litig.*, No. 19-cv-1222 (D. Minn. Sept. 10, 2020), ECF No. 259.

Respectfully submitted,

/s/ *Troy Bozarth* (with consent)
Troy A. Bozarth
**HEPLERBROOM LLC**
130 N. Main St.
P.O. Box 510
Edwardsville, IL 62025
Tel: (618) 656-0184
tab@heplerbroom.com

David J. Lender
Adam C. Hemlock
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
David.Lender@weil.com
Adam.Hemlock@weil.com

Lara B. Bach
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Tel: (305) 577-3100
Lara.Bach@weil.com

***Counsel for Defendant BASF Corporation***

/s/ *Eric Mahr* (with consent)
Eric Mahr
**FRESHFIELDS BRUCKHAUS
DERINGER US LLP**
700 13th Street NW, 10th Floor
Washington, DC 20005-3960
Tel: (202) 777-4545
Fax: (202) 777-4555
eric.mahr@freshfields.com

***Counsel for Defendant Cargill,
Incorporated***

/s/ *Christopher M. Hohn* (with consent)
Christopher M. Hohn
Sharon B. Rosenberg
Edwin G. Harvey
**THOMPSON COBURN LLP**
One US Bank Plaza
St. Louis MO 63101
Phone: (314) 552-6000
chohn@thompsoncoburn.com
srosenberg@thompsoncoburn.com

Jonathan I. Gleklen
Laura S. Shores
**ARNOLD & PORTER KAYE SCHOLER
LLP**
601 Massachusetts Ave., NW
Washington, DC 20001
Phone: (202) 942-5000
jonathan.gleklen@arnoldporter.com
laura.shores@arnoldporter.com

***Counsel for Defendants Bayer CropScience
LP and Bayer CropScience Inc.***

/s/ *Kathy L. Osborn* (with consent)
Kathy L. Osborn
**FAEGRE DRINKER BIDDLE & REATH
LLP**
300 N. Meridian St., Suite 2500
Indianapolis, IN 46204
Telephone: (317) 237-8261
Email: kathy.osborn@faegredrinker.com

Colby Anne Kingsbury
**FAEGRE DRINKER BIDDLE & REATH
LLP**
311 S. Wacker Dr., #4400
Chicago, IL 60606
Telephone: (312) 212-6573
Email: colby.kingsbury@faegredrinker.com

***Counsel for Defendant CHS Inc.***

/s/ *Jason Leckerman* (with consent)
Leslie E. John
Jason A. Leckerman
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Tel: (215) 665-8500
johnl@ballardspahr.com
leckermanj@ballardspahr.com

*Counsel for Defendants Corteva, Inc.*
*and Pioneer Hi-Bred International, Inc.*


/s/ *Michael L. McCluggage* (with consent)
Michael L. McCluggage
Barack S. Echols
**EIMER STAHL LLP**
224 S. Michigan Ave.
Suite 1100
Chicago, IL 60604
(312) 660-7600 (telephone)
(312) 692-1718 (facsimile)
mmccluggage@eimerstahl.com
bechols@eimerstahl.com

Collin J. Vierra
**EIMER STAHL LLP**
99 South Almaden Boulevard
Suite 662
San Jose, CA 85113
(669) 231-8755 (telephone)
(312) 692-1718 (facsimile)
cvierra@eimerstahl.com

*Counsel for Defendant Federated*
*Co-operatives Limited*


/s/ *Barry S. Noeltner* (with consent)
Barry S. Noeltner
**HEYL, ROYSTER, VOELKER &**
**ALLEN, P.C.**
Suite 100
Mark Twain Plaza III
105 West Vandalia Street
Edwardsville, Illinois 62025
Telephone: 618.656.4646
PRIMARY E-SERVICE -
edwecf@heylroyster.com
SECONDARY E-SERVICE –
bnoeltner@heylroyster.com

Michael A. Lindsay (MN Lic. #0163466)
F. Matthew Ralph (MN Lic. #0323202)
Jaime Stilson (MN Lic. #0392913)
**DORSEY & WHITNEY LLP**
50 South Sixth Street Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600
lindsay.michael@dorsey.com
ralph.matthew@dorsey.com
stilson.jaime@dorsey.com

*Counsel for Defendants GROWMARK, Inc.*
*and GROWMARK FS, LLC*

/s/ *G. Patrick Watson* (with consent)
G. Patrick Watson
Lindsay S. Johnson
**BRYAN CAVE LEIGHTON PAISNER LLP**
1201 West Peachtree Street NW
Suite 1400
Atlanta, Georgia 30309
(404) 572-6600
(404) 572-6999 (facsimile)
patrick.watson@bclplaw.com
lindsay.johnson@bclplaw.com

Paul J. Lopach
Michael J. Hofmann
Luke Westerman
**BRYAN CAVE LEIGHTON PAISNER LLP**
1700 Lincoln Street
Suite 4100
Denver, CO 80203
(303) 861-7000
(303) 866-0200 (facsimile)
paul.lopach@bclplaw.com
michael.hofmann@bclplaw.com
luke.westerman@bclplaw.com

Travis H. Campbell
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
(314) 259-2020 (facsimile)
travis.campbell@bclplaw.com

*Counsel for Defendant Nutrien Ag Solutions, Inc.*

/s/ *Eric D. Brandfonbrener* (with consent)
Eric D. Brandfonbrener
**PERKINS COIE, LLP**
131 S. Dearborn St., Suite 1700
Chicago, IL 60603
(312) 324-8400
(312) 324-9400(facsimile)
ebrand@perkinscoie.com

Shylah R. Alfonso
**PERKINS COIE, LLP**
1201 Third Avenue Suite 4900
Seattle, WA 98101-3099
(206) 359-3980
(206) 359-4980 (facsimile)
salfonso@perkinscoie.com

*Counsel for Defendant Simplot AB Retail Sub, Inc.*

/s/ *Paul S. Mishkin* (with consent)
Paul S. Mishkin
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
Tel: 212-450-4292
paul.mishkin@davispolk.com

Robert T. Haar – #30044MO
Matthew A. Martin - #64000MO
**HAAR & WOODS, LLP**
1010 Market Street, Suite 1620
St. Louis, Missouri 63101
(314) 241-2224
(314) 241-2227 (Facsimile)
roberthaar@haar-woods.com
mmartin@haar-woods.com

*Counsel for Defendant Syngenta Corporation*

13

/s/ *Lee A. Peifer*  (with consent)
Lee A. Peifer
James R. McGibbon
**EVERSHEDS SUTHERLAND (US) LLP**
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
Tel: 404-853-8000
Fax: 404-853-8806
leepeifer@eversheds-sutherland.com
jimmcgibbon@eversheds-sutherland.com

*Counsel for Defendant Tenkoz, Inc.*


/s/ *Nathan P. Eimer* (with consent)
Nathan P. Eimer
Vanessa G. Jacobsen
Brian Y. Chang
Sarah H. Catalano
**EIMER STAHL LLP**
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Tel: 312-660-7600
neimer@eimerstahl.com
vjacobsen@eimerstahl.com
bchang@eimerstahl.com
scatalano@eimerstahl.com

*Counsel for Defendant Winfield Solutions, LLC*

/s/ *Craig C. Martin* (with consent)
Craig C. Martin
Matt D. Basil
**WILLKIE FARR & GALLAGHER LLP**
300 North LaSalle
Chicago, IL 60654-3406
Telephone: (312) 728-9000
cmartin@willkie.com
mbasil@willkie.com

/s/ J. Nicci Warr (with consent)
J. Nicci Warr, #59975
7700 Forsyth Boulevard, Suite 1100
St. Louis, MO 63105
(314) 863-0800 (telephone)
(314) 863-9388 (facsimile)
nicci.warr@stinson.com

Alexander C. Barrett, #68695
230 West McCarty Street
Jefferson City, Missouri 65101
(573) 636-6263 (telephone)
(573) 556-3637 (facsimile)
alexander.barrett@stinson.com

*Counsel for Defendant Univar Solutions Inc.*

**CERTIFICATE OF SERVICE**

I, G. Patrick Watson, hereby certify that on September 3, 2021, I electronically filed the

foregoing Memorandum in Support of Motion to Stay Discovery using the CM/ECF system, which

will send notification of such filing to all parties of record.

/s/ G. Patrick Watson
G. Patrick Watson