## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: CROP INPUTS ANTITRUST LITIGATION | ) ) ) ) ) | 4:21-MD-2993-SEP **ALL CASES** |

### DEFENDANTS'[1] REPLY MEMORANDUM
### IN SUPPORT OF MOTION TO STAY DISCOVERY

Plaintiffs' opposition brief presents no valid reason why a discovery stay should not issue. Plaintiffs recognize—as they must—that this Court has the discretion to stay discovery. Yet, they misapply the applicable balancing test to the particular circumstances of this complex antitrust case, misconstrue Defendants' position as to the merits of a brief stay, and ultimately fail to show why a stay would pose any prejudice. The applicable factors weigh in favor of a stay.

### ARGUMENT

**A.**      **The CAC Should Be Tested under *Twombly* Before Discovery Opens**

Contrary to Plaintiffs' assertions, Defendants do not seek an "automatic stay" or a "complete standstill" of this litigation. In accordance with Supreme Court precedent, Defendants seek a *brief* stay of discovery here while the merits of Plaintiffs' newly-filed consolidated amended class action complaint (the "CAC") are tested.[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

---

[1] Bayer CropScience LP, Bayer CropScience Inc., BASF Corporation, Corteva Incorporated, Pioneer Hi-Bred International, Syngenta Corporation, Cargill, Incorporated, Univar Solutions, Incorporated, Winfield Solutions, LLC, CHS Incorporated, Federated Co-operatives Limited, GROWMARK, Inc., GROWMARK FS, LLC, Nutrien Ag Solutions, Incorporated, Simplot AB Retail Sub, Incorporated, and Tenkoz, Inc. (collectively, "Defendants").

[2] Plaintiffs' Opposition chides Defendants for making "no reference to particular allegations." Pls.' Opp'n 5, ECF No. 119. As the Court is aware, pursuant to the ECF No. 61, the Plaintiffs' CAC was not filed until September 17, 2021, while the Defendant's Motion to Stay Discovery was filed on September 3, 2021.

558–59 (2007).

As predicted in Defendants' opening brief, Plaintiffs' CAC suffers from many of the same flaws as their earlier complaints. *See* ECF No. 104. The CAC is still based on an unwieldy (and implausible) theory in which sixteen Defendants—operating with diverse economic incentives and functions at various levels of the supply chains for all manner of different crop-input products—somehow conspired to boycott "ecommerce Crop Inputs sales platforms" that Plaintiffs think might have facilitated lower-cost options. *E.g.*, *id.*, ¶ 8.

The "new" pleading did nothing to address the prior pleading's fatal shortcomings—conclusory allegations, a lack of specificity, and improper group pleading, among other things. Although claiming the CAC "allege[s] very specific details" regarding "Defendants' collusion" and "Defendants' conspiracy to boycott online sales platforms," Pls.' Opp'n 5, ECF No. 119, nothing could be further from the truth. Plaintiffs have pled nothing even approaching direct evidence of a conspiracy, nor have they alleged the "who, what, where, when" of any supposed agreement or even of any improper competitor communications. Plaintiffs instead seek to *infer* a conspiracy, among over a dozen separate entities, to boycott "electronic platforms" based on conduct wholly consistent with independent, lawful market behavior. There is a strong likelihood that Plaintiffs' claims (which all rest on the alleged "conspiracy") will be dismissed for a number of compelling reasons, including: (1) the claimed conspiracy is based on conclusory allegations of collective conduct without any differentiation among Defendants,[3] (2) Plaintiffs fail to allege parallel conduct or any conduct that suggests a conspiracy—rather, the limited individual conduct

---

[3] "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557. Rather, "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of *collective* responsibility *must be dismissed*." *Bank of Am.*, *N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (emphasis added).

alleged is wholly consistent with independent, rational, and non-conspiratorial behavior that does not support an inference that any conspiracy exists, and (3) Plaintiffs fail to allege the basic element for Article III standing—that they suffered an antitrust injury plausibly caused by Defendants' alleged conspiracy.[4]

Thus, if the Court is inclined to consider the likelihood that Defendants will succeed on their motion to dismiss the CAC, a review of the CAC reinforces the strong likelihood of dismissal. Defs.' Br. 1-2, ECF No. 80-1. Overall, arguments raised by Defendants in their earlier motions to dismiss, filed before transfer to this MDL, will apply with the same force to the CAC. *See, e.g.*, Defs.' Mot. to Dismiss, *Lex v. Bayer Crop Science LP*, No. 3:21-cv-00122-NJR (S.D. Ill. May 1, 2021), ECF No. 67.

Regardless of the strength of those arguments, the Court need not definitively conclude that Defendants will "win the motions to dismiss entirely" to stay discovery as Plaintiffs suggest. Pls.' Opp'n 4, ECF No. 119. On the contrary, as Defendants pointed out in their opening brief, the Court is not required to assess the likelihood of success on the merits at all in deciding the present motion. Instead, the Court may apply a three-factor test. *See* Defs.' Br. 3, ECF No. 80-1 (discussing legal standard); *see also In re: Pre-Filled Propane Antitrust Litig.* No. 14-md-02567, 2015 WL 11022887, at *2 (W.D. Mo. Feb. 24, 2015) (internal quotations omitted) (setting out three-factor test including "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved").

---

[4] Additionally, Plaintiffs' claims are also time-barred to the extent they rely on conduct which occurred outside the applicable limitations period—four years for federal antitrust and RICO claims and even shorter for some state law claims. *See* 15 U.S.C. §15(b); *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 146 (1987) (adopting four-year statute of limitations for civil RICO claims).

B.     **Eliminating or Narrowing the Issues on which Discovery Is Ultimately Needed is Efficient**

Plaintiffs' response entirely disregards the opportunity to conserve the Court's and the parties' resources while the motions to dismiss are pending. Plaintiffs instead take an untenable position: "there is no basis to believe that such a stay enhances judicial efficiency." Pls.' Opp'n 1, ECF No. 119. But again, discovery and any related issues requiring judicial resolution may be completely avoided or significantly narrowed by the upcoming motion practice. *See Riehm v. Engelking*, No. 06-cv-293, 2006 WL 2085404, at \*2 (D. Minn. July 25, 2006) ("good cause" for stay where ruling will narrow issues); *see also Propane*, 2015 WL 11022887, at \*4 (assessing "judicial economy of allowing discovery to proceed"). Rather than opening the floodgates to discovery on a litany of antitrust, RICO, and other claims that may not be viable, a stay will conserve resources of the numerous parties and the Court.

C.     **Defendants Have Demonstrated the Hardship of Any Discovery at this Stage of the Case**

Defendants are better positioned than Plaintiffs to explain the burden in engaging full-fledged discovery at this early stage—including in producing any "government investigation documents." To suggest that there is no burden in opening discovery in this antitrust case, as Plaintiffs do, is an obvious mischaracterization of the discovery process in antitrust cases, and is far out of step with courts' recognition of the extensive related burdens. *See Twombly*, 550 U.S. at 558–59 (recognizing "extensive scope" and "unusually high cost of discovery" in antitrust cases). If discovery were to begin now, Defendants would undoubtedly incur significant expense associated with reviewing written discovery, investigating the availability of requested information and the cost/burden of collecting it, drafting objections and responses, negotiating document productions, and reviewing documents for relevance and responsiveness, among other things.

Plaintiffs seemingly propose that certain Defendants produce documents previously produced to various governmental authorities without even having to serve document requests—let alone providing Defendants with the right to object to those requests, the obligation to meet and confer over those objections, and the opportunity to fully litigate those objections.[5] To name a few of the issues, there are possession, custody, and control issues with jurisdictional complications[6] that this Court will need to address in resolving any objections to production, and a time-consuming review process for relevancy and confidentiality. *See Propane*, 2015 WL 11022887, at *3 (a party cannot "simply hand over" documents without review). This undoubtedly will create a hardship that is unwarranted before Plaintiffs' complaint is tested by a motion to dismiss. *See id.*, 2015 WL 11022887, at *5; Defs.' Br. 4-6, 8-10, ECF No. 80-1.

Plaintiffs base much of their opposition on the existence of "indisputably relevant" and "concurrent" government investigations. Pls.' Opp'n 7, ECF No. 119 at 7. But, this categorization is entirely *disputed* and inaccurate. Plaintiffs have failed to demonstrate the relevance to this

---

[5] If Plaintiffs were to serve procedurally proper requests for these documents (instead of merely asserting that they are entitled to the documents in response to the motion to stay), Defendants would object in due course, and those objections would ultimately need to be resolved by the Court after focused briefing.

[6] Plaintiffs' argument that whenever a defendant moves to dismiss for lack of personal jurisdiction, jurisdictional discovery must be ordered, misstates the law. Pls.' Opp'n 8 n.7, ECF No. 119. To the contrary, making out a *prima facie* case of jurisdiction is a prerequisite for a party to obtain jurisdictional discovery. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) ("the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted"); *Sullivan v. Barclays PLC*, No. 13-cv-2811, 2017 WL 685570, at *49 (S.D.N.Y. Feb. 21, 2017) (denying plaintiffs' request for jurisdictional discovery for failure to make out a prima facie case of jurisdiction). Here, although Plaintiffs have known for months that FCL intends to move to dismiss for lack of personal jurisdiction because it does not sell any crop inputs in the United States, Plaintiffs have not made a single allegation in their (second) consolidated complaint that FCL has had contacts with the United States. *See* ECF No. 104 ¶¶ 65, 104, 117, 264(b). The court's analysis in *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008), which Plaintiffs mischaracterize in their opposition, is fully consistent with these basic propositions.

litigation of a foreign investigation, into issues related to that foreign market.[7] *See, e.g.*, *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 921 (N.D. Cal. 2019) ("[A]llegations of investigations or cases outside of the United States are fully unpersuasive: foreign laws may prohibit behavior that is lawful under § 1 [of the Sherman Act]. Accordingly, many of Plaintiffs' allegations, particularly those concerning investigations by [foreign] authorities, do not factor into the Court's analysis.") (internal citation omitted).

Plaintiffs fare no better in trying to link the FTC matter to the present action. Plaintiffs do no more than selectively quote the language from Corteva's SEC disclosure that Defendants directed the Court to in their opening brief. *See* Pls.' Opp'n 8, ECF No. 119. Critically, that quoted language includes no mention of any *coordinated* conduct between Corteva and any other Defendants—much less any mention of the ecommerce sales platforms that are the focus of the CAC in *this* litigation. *See id.* at 8. Plaintiffs in no way connect any investigation into Corteva's unilateral conduct to the allegations in this case.

In short, Plaintiffs have not connected the foreign or the FTC investigations to the claims in the CAC against the Defendants named here. The existence of those investigations therefore cannot "bolster the inference of a conspiracy among [all] Defendants," as Plaintiffs contend. *Id.* at 7.[8]

---

[7] Except for one, none of the Defendants in this case is a subject of the Canadian investigations; it involves only Canadian entities. And with respect to the one Canadian Defendant named in the complaint, Plaintiffs allege only actions in Canada involving Canadian parties, and none involving the U.S. *See* Defs.' Br. 7-8, ECF No. 80-1.

[8] Ultimately, regardless of the burden in producing any CCB or FTC documents, Plaintiffs are not entitled to documents (now *or later*) that are not relevant. *Hofer v. Mack Trucks, Inc*., 981 F.2d 377, 380 (8th Cir. 1992) ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.") (internal citations omitted). Thus, even independent of the Court's ruling on Defendants' Motion to Stay, the production of these documents should not occur, if at all, until after the Court's ruling on Defendants' forthcoming

These factors are key to distinguishing many of the cases Plaintiffs cited. In *Aluminum Sulfate*, where the court directed production of documents previously produced to the DOJ, the defendants' involvement in a related, parallel criminal proceeding was undisputed. *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 2:16-md-2687, at 1 (D.N.J. July 5, 2016), ECF No. 206. The court also found that "multiple defendants ha[d] either pled guilty or sought leniency from the government regarding the very misconduct Plaintiffs allege." *Id.* at 5. And, "[t]wo individual Defendants [were] currently involved in a related criminal proceeding pending in [the same] District." *Id.* Similarly, *In re Lithium Ion Batteries Antitrust Litigation* involved underlying criminal proceedings where various defendants or co-conspirators had previously pleaded guilty to price-fixing—which was precisely the basis of the pending MDL. Case No. 4:13-md-02420, ECF No. 503 (N.D. Cal.).[9] And, *In re Provigil Antitrust Litigation* involved four "related cases" with "overlapping defendants and issues" and, for that reason, production of certain materials previously to the Federal Trade Commission was allowed. No. 06-CV-1797 (E.D. Pa. Sept. 24,

Motions to Dismiss defining the scope of the case and thereby allowing relevance to be assessed. Plaintiffs have made no showing to justify a premature production of government documents outside of the normal discovery process.

[9] Plaintiffs' other cases are procedurally distinguishable. In particular, a number deal with motions to compel or motions to stay entire proceedings and apply different legal standards. *See*, *e.g.*, *In re Milk Prod. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1027–28 (D. Minn. 1997) (deciding motion to compel production); *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 253 (D. Md. 2004) (applying a five-factor test to government's request to stay civil discovery in light of criminal case); *In re Niaspan Antitrust Litig.*, No. 13-MD-2460 (E.D. Pa. Feb. 19, 2014), ECF No. 61 (entering the parties' proposed case management order in which defendants agreed to produce limited documents); *In re Neurontin Antitrust Litig.*, No. 02-CV-1390 (D.N.J. Oct. 29, 2002), ECF No. 25 (deciding motion to stay entire case pending resolution of related patent infringement litigations). And in one of those cases, *Milk*, although decided under a different standard, the court denied plaintiffs' request for documents submitted to the DOJ where such documents did "not parallel the issues" in the plaintiffs' complaint. *In re Milk*, 84 F. Supp. 2d at 1026. Thus, *Milk* actually highlights why here—where the relevance of documents produced to U.S. and foreign governmental agencies to any alleged issues has not been shown—discovery should not proceed unless and until the Court finds that Plaintiffs have stated a plausible conspiracy claim and, if so, the scope of that claim.

2009), ECF No. 219.

There is simply no reason here to move forward with discovery involving unrelated investigations that impose burden and enmesh the Court in complicated custodial and foreign discovery issues while a dispositive motion is pending. Because the decision to stay discovery is tied to the particular circumstances of the case, this Court should follow the guidance of the courts in *Propane*, 2015 WL 11022887 and *In re: Wholesale Grocery Products Antitrust Litigation*, No. 09-md-2090, 2010 WL 11469883 (D. Minn. Mar. 3, 2010), which are more analogous to the instant matter, and credit Defendants' relevance and burden arguments. Defs.' Br. 4-6, ECF No. 80-1.

**D.      Plaintiffs Will Suffer No Prejudice**

Plaintiffs' claims that they will be prejudiced by a stay do not pass muster. Plaintiffs contend, without elaboration, that a stay "increases the risk of prejudice from loss of evidence." Pls.' Opp'n 9, ECF No. 119. But here, all parties are informed of their preservation obligations, and Defendants confirmed that they have instituted litigation holds. *See* Tr. of Status Conference 47:14–25, ECF No. 75 (confirming litigation holds in place). Further, Plaintiffs' own delay in filing suit cuts against their cry of time-based prejudice. *See Propane*, 2015 WL 11022887, *2 (any delay caused by the stay "minimal compared to the delay in filing").

In attempting to establish prejudice, Plaintiffs again presume a material connection between the CCB and FTC investigations and this case. With that as their theme, Plaintiffs seek to "keep pace with developments in the investigations." Pls.' Opp'n 9, ECF No. 119. But that is a vague and unsupported concept, especially since government investigations are typically confidential. It is also unclear how Plaintiffs would be "hindered in making informed decisions as to litigation strategy" or face a "significant information disadvantage" if a short stay were imposed. *Id.* To the contrary, Plaintiffs will benefit from the Court's forthcoming guidance on the viability

of their claims, all while documents are being appropriately preserved.

Ultimately, any theoretical and remote risk of prejudice does not outweigh the actual burden and expense associated with opening discovery now. Plaintiffs cannot demonstrate any prejudice from a short stay.

**E.     Plaintiffs' Alternative "Limited Stay" Should Be Rejected**

As discussed above, the relevant factors weigh in favor of a *complete* discovery stay. Defendants oppose any "interim/intermediate" approach to discovery while motions to dismiss are pending. Given the current briefing schedule, which concludes on January 19, 2022, any stay of discovery is unlikely to extend beyond a few months. *See* Order, ECF No. 61. Between now and January, the parties will be busy drafting their motions and briefs, and the requested stay will not hamper meaningful progress in this case. There is no need for the parties (and the Court) to dedicate additional resources in the meantime to discovery issues that may soon be moot.

The parties are seemingly in agreement that during the pendency of motions to dismiss, some useful progress may be possible in other areas. The parties recently negotiated an initial case management order and presented it to the Court on October 1, 2021 as part of an omnibus proposal to address scheduling issues and discovery obligations. *See* Joint Scheduling Plan, ECF No. 125. Pursuant to that submission, the parties agreed that they would present an agreed proposed order or submit disputes over the Protective Order to the Court no later than November 1, 2021. *Id.* at 2. Additionally, Defendants proposed that the parties similarly present an agreed proposed order or submit disputes over the ESI Protocol to the Court no later than December 21, 2021. *Id*. Whenever this Court determines that any discovery shall become appropriate, Defendants view the entry of a Protective Order and ESI Protocol as a necessary predicate. It would make sense for those preliminary requirements to be satisfied before the parties enter into the process of serving requests

for production and engaging in the negotiation over objections as contemplated and required by Rules 26 and 34.

In the spirit of compromise (and in hopes of reaching a full agreement), Defendants also offered to provide Rule 26(a) disclosures by the later of December 21, 2021 or 30 days after the Court's ruling on the motion to stay, "[e]xcept as may otherwise be provided by the Court, including in the Court's ruling on Defendants' Motion to Stay." *Id*. Defendants oppose any fact discovery while motions to dismiss are pending, but if the Court believes that some amount of discovery should happen, the maximum ought to be the exchange of Rule 26(a) disclosures.

## **CONCLUSION**

For the aforementioned reasons, as well as those in Defendants' opening brief, this Court should stay discovery pending resolution of Defendants' forthcoming motions to dismiss.

Respectfully submitted,

/s/ *Troy Bozarth* (with consent)
Troy A. Bozarth
**HEPLERBROOM LLC**
130 N. Main St.
P.O. Box 510
Edwardsville, IL 62025
Tel: (618) 656-0184
tab@heplerbroom.com

David J. Lender
Adam C. Hemlock
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
David.Lender@weil.com
Adam.Hemlock@weil.com

Lara B. Bach
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Tel: (305) 577-3100
Lara.Bach@weil.com

*Counsel for Defendant BASF Corporation*

/s/ *Eric Mahr* (with consent)
Eric Mahr
**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
700 13th Street NW, 10th Floor
Washington, DC 20005-3960
Tel: (202) 777-4545
Fax: (202) 777-4555
eric.mahr@freshfields.com

*Counsel for Defendant Cargill, Incorporated*

/s/ *Christopher M. Hohn* (with consent)
Christopher M. Hohn
Sharon B. Rosenberg
Edwin G. Harvey
**THOMPSON COBURN LLP**
One US Bank Plaza
St. Louis MO 63101
Phone: (314) 552-6000
chohn@thompsoncoburn.com
srosenberg@thompsoncoburn.com

Jonathan I. Gleklen
Laura S. Shores
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001
Phone: (202) 942-5000
jonathan.gleklen@arnoldporter.com
laura.shores@arnoldporter.com

*Counsel for Defendants Bayer CropScience LP and Bayer CropScience Inc.*

/s/ *Kathy L. Osborn* (with consent)
Kathy L. Osborn
**FAEGRE DRINKER BIDDLE & REATH LLP**
300 N. Meridian St., Suite 2500
Indianapolis, IN 46204
Telephone: (317) 237-8261
Email: kathy.osborn@faegredrinker.com

Colby Anne Kingsbury
**FAEGRE DRINKER BIDDLE & REATH LLP**
311 S. Wacker Dr., #4400
Chicago, IL 60606
Telephone: (312) 212-6573
Email: colby.kingsbury@faegredrinker.com

*Counsel for Defendant CHS Inc.*

/s/ *Jason Leckerman* (with consent)
Leslie E. John
Jason A. Leckerman
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Tel: (215) 665-8500
johnl@ballardspahr.com
leckermanj@ballardspahr.com

*Counsel for Defendants Corteva, Inc.*
*and Pioneer Hi-Bred International, Inc.*

/s/ *Michael L. McCluggage* (with consent)
Michael L. McCluggage
Barack S. Echols
**EIMER STAHL LLP**
224 S. Michigan Ave.
Suite 1100
Chicago, IL 60604
(312) 660-7600 (telephone)
(312) 692-1718 (facsimile)
mmccluggage@eimerstahl.com
bechols@eimerstahl.com

Collin J. Vierra
**EIMER STAHL LLP**
99 South Almaden Boulevard
Suite 662
San Jose, CA 85113
(669) 231-8755 (telephone)
(312) 692-1718 (facsimile)
cvierra@eimerstahl.com

*Counsel for Defendant Federated*
*Co-operatives Limited*

/s/ *Barry S. Noeltner* (with consent)
Barry S. Noeltner
**HEYL, ROYSTER, VOELKER &**
**ALLEN, P.C.**
Suite 100
Mark Twain Plaza III
105 West Vandalia Street
Edwardsville, Illinois 62025
Telephone: 618.656.4646
PRIMARY E-SERVICE -
edwecf@heylroyster.com
SECONDARY E-SERVICE –
bnoeltner@heylroyster.com

Michael A. Lindsay (MN Lic. #0163466)
F. Matthew Ralph (MN Lic. #0323202)
Jaime Stilson (MN Lic. #0392913)
**DORSEY & WHITNEY LLP**
50 South Sixth Street Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600
lindsay.michael@dorsey.com
ralph.matthew@dorsey.com
stilson.jaime@dorsey.com

*Counsel for Defendants GROWMARK, Inc.*
*and GROWMARK FS, LLC*

/s/ *G. Patrick Watson* (with consent)
G. Patrick Watson
Lindsay S. Johnson
**BRYAN CAVE LEIGHTON PAISNER LLP**
1201 West Peachtree Street NW
Suite 1400
Atlanta, Georgia 30309
(404) 572-6600
(404) 572-6999 (facsimile)
patrick.watson@bclplaw.com
lindsay.johnson@bclplaw.com

Paul J. Lopach
Michael J. Hofmann
Luke Westerman
**BRYAN CAVE LEIGHTON PAISNER LLP**
1700 Lincoln Street
Suite 4100
Denver, CO 80203
(303) 861-7000
(303) 866-0200 (facsimile)
paul.lopach@bclplaw.com
michael.hofmann@bclplaw.com
luke.westerman@bclplaw.com

Travis H. Campbell
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
(314) 259-2020 (facsimile)
travis.campbell@bclplaw.com

*Counsel for Defendant Nutrien Ag Solutions, Inc.*

/s/ *Eric D. Brandfonbrener* (with consent)
Eric D. Brandfonbrener
**PERKINS COIE, LLP**
131 S. Dearborn St., Suite 1700
Chicago, IL 60603
(312) 324-8400
(312) 324-9400(facsimile)
ebrand@perkinscoie.com

Shylah R. Alfonso
**PERKINS COIE, LLP**
1201 Third Avenue Suite 4900
Seattle, WA 98101-3099
(206) 359-3980
(206) 359-4980 (facsimile)
salfonso@perkinscoie.com

*Counsel for Defendant Simplot AB Retail Sub, Inc.*

/s/ *Paul S. Mishkin* (with consent)
Paul S. Mishkin
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
Tel: 212-450-4292
paul.mishkin@davispolk.com

Robert T. Haar – #30044MO
Jozef J. Kopchick - #67685MO
**HAAR & WOODS, LLP**
1010 Market Street, Suite 1620
St. Louis, Missouri 63101
(314) 241-2224
(314) 241-2227 (Facsimile)
roberthaar@haar-woods.com
jkopchick@haar-woods.com

*Counsel for Defendant Syngenta Corporation*

/s/ *Lee A. Peifer*  (with consent)
Lee A. Peifer
James R. McGibbon
**EVERSHEDS SUTHERLAND (US) LLP**
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
Tel: 404-853-8000
Fax: 404-853-8806
leepeifer@eversheds-sutherland.com
jimmcgibbon@eversheds-sutherland.com

*Counsel for Defendant Tenkoz, Inc.*


/s/ *Nathan P. Eimer* (with consent)
Nathan P. Eimer
Vanessa G. Jacobsen
Brian Y. Chang
Sarah H. Catalano
**EIMER STAHL LLP**
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Tel: 312-660-7600
neimer@eimerstahl.com
vjacobsen@eimerstahl.com
bchang@eimerstahl.com
scatalano@eimerstahl.com

*Counsel for Defendant Winfield Solutions, LLC*

/s/ *Craig C. Martin* (with consent)
Craig C. Martin
Matt D. Basil
**WILLKIE FARR & GALLAGHER LLP**
300 North LaSalle
Chicago, IL 60654-3406
Telephone: (312) 728-9000
cmartin@willkie.com
mbasil@willkie.com

/s/ J. Nicci Warr (with consent)
J. Nicci Warr, #59975
7700 Forsyth Boulevard, Suite 1100
St. Louis, MO 63105
(314) 863-0800 (telephone)
(314) 863-9388 (facsimile)
nicci.warr@stinson.com

Alexander C. Barrett, #68695
230 West McCarty Street
Jefferson City, Missouri 65101
(573) 636-6263 (telephone)
(573) 556-3637 (facsimile)
alexander.barrett@stinson.com

*Counsel for Defendant Univar Solutions Inc.*

## CERTIFICATE OF SERVICE

I, G. Patrick Watson, hereby certify that on October 4, 2021, I electronically filed the foregoing Reply Memorandum in Support of Motion to Stay Discovery using the CM/ECF system, which will send notification of such filing to all parties of record.

/s/ G. Patrick Watson
G. Patrick Watson