**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: CROP INPUTS ANTITRUST LITIGATION | Case No. 4:21-md-02993-SEP |
| | MDL No. 2993 |
| This Document Relates to:<br><br>ALL CASES | **STIPULATION AND [PROPOSED] ORDER REGARDING ELECTRONICALLY STORED INFORMATION** |

This Stipulated Protocol and Order For Discovery Of Electronically Stored Information and Paper Documents ("ESI Protocol Order") shall govern the Parties in the above-captioned case whether they currently are involved or become so in the future, and any related actions that may later be consolidated with this case (collectively, the "Litigation").

1.     **GENERAL PROVISIONS**

    A.    **Applicability:** This ESI Protocol will govern the production of all documents and ESI, including all computer-generated information or data of any kind, by the Parties. This Protocol governs all Parties to these proceedings, whether they are currently involved or become so in the future. All disclosures and productions made pursuant to this Protocol are subject to the Stipulation for Protective Order entered, or to be entered, in this matter.

    B.    **Limitations & Non-Waiver:** Pursuant to the terms of this ESI Protocol, information regarding search process and ESI practices may be disclosed, but compliance with this ESI Protocol does not constitute a waiver, by any Party, of any objection to the production of particular ESI for any reason,

including that it is irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party.  Nothing in this ESI Protocol shall be construed to affect the discoverability of information or the admissibility of discoverable information.  Nor shall anything in this ESI Protocol be construed to affect the authenticity of any document or data.  All objections to the discoverability, admissibility, authenticity, confidentiality, or production of any documents and ESI are preserved and may be asserted at any time.  For the avoidance of doubt, a Party's compliance with this ESI Protocol will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.  All Parties preserve all such privileges and protections, and all Parties reserve the right to object to any such privileges and protections.

C.   **ESI Liaisons:** Each Party will identify an e-discovery liaison who is and will be knowledgeable about and responsible for discussing matters related to its ESI.  Any attorney representing a Party, including the e-discovery liaison, may participate in meet-and-confer conferences, and it is not required that the e-discovery liaison be present for the Parties to meet and confer about matters involving ESI, however the Parties agree to work in good faith to schedule e-discovery conferences when the e-discovery liaisons are available to aid in resolving disputes involving ESI without Court intervention.

D.   **Deadlines:**  References to schedules and deadlines in this ESI Protocol shall comply with Federal Rule of Civil Procedure 6 with respect to computing deadlines.

E.   **Definitions:**

1.   <u>Producing Party</u> means a Party or Non-Party that gives testimony or produces Discovery Material in this action.

2.   <u>Requesting Party</u> is the Party (or Parties) who served the discovery requests pursuant to which a Producing Party produces Discovery Material in this action.

3.   <u>Discovery Material means</u> all items or information, regardless of the medium or manner in which it is generated, stored, or maintained, that are produced or generated in disclosures or responses to discovery in this matter, including, but not limited to, documents, tangible things, depositions, deposition exhibits, interrogatory responses, responses to requests for production of documents, responses to subpoenas, and responses to requests for admissions.

F.   **Confidential Information:**  For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as confidential under the forthcoming Protective Order (Dkt. [X]).

G.   **Preservation:**  Each Party shall be responsible for taking reasonable and proportional steps to preserve potentially relevant documents and ESI within its possession, custody, or control. The Parties are not required to modify or

suspend, on a going forward basis, the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations.  The Parties have not taken, and are not required to take, any such backup media out of ordinary rotation. Pursuant to this Protocol, the Parties have no obligation to preserve, collect or produce information or data sources such as the following if they are not kept in the ordinary course of business:

1.      "Deleted," "slack," "fragmented," or "unallocated" data on hard drives;

2.      Random access memory (RAM) or other ephemeral data;

3.      Online access data such as temporary internet files, history, cache, cookies, etc.;

4.      Data in metadata fields that are frequently updated automatically, such as the "Date Accessed" value in Microsoft Windows operating systems;

5.      Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

6.      Known junk files from the NIST list or unimportant data files;

7.      Network, server, or software application logs;

8.      Structural files not material to individual document contents (e.g., CSS, .XSL, .XML, .DTD, etc.);

9.      System files and files not actively saved by user; and

10.     Automated emails not generated by a human author, including but not limited to automated out of office replies.

## 2.     **GENERAL PRODUCTION FORMAT PROTOCOLS**

A.     **TIFFs:**  Except as set forth elsewhere in this protocol, all production images will be provided as single-page Group IV Tagged Image File Format (.TIF or .TIFF) files at 300 x 300 dpi resolution and 8.5 x 11 inch page size, unless a document requires a higher resolution in order to be appropriately viewed. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format, or a combination of native and TIFF formats.

B.     **Text Files:**  A searchable, document-level text file shall be provided for each paper document or ESI file produced as TIFF images or in native format. Each such file will have a filename matching the Bates number applied to the first page of  the corresponding static image file or placeholder file, followed by the .TXT extension.  For ESI, the Parties agree that the searchable, document-level text file shall be extracted directly from the native file.  For ESI from which text cannot be extracted, for redacted documents, or for paper documents, the Parties agree that they will produce document-level OCR text for each such document.   To the extent

practicable, the Parties will consider producing  searchable text in ANSI format.

C.    **Production of Native Items:**  The Parties agree that ESI shall be produced as TIFF images consistent with the format described in Section 2(A) with an accompanying load file.  The exception to this rule shall be spreadsheet-application files (e.g., MS Excel), presentation files (e.g., MS PowerPoint), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi). Other files with hidden content, tracked changes, comments, notes, or other similar information may be produced as TIFF images with such information shown or as native items. The Parties may discuss additional production in native format on a document by document or category by category basis. Any documents produced in native format should be produced in accordance with the following specifications:

1.    A unique document number shall be used as the file name, and the original file name and file extension shall be preserved in the corresponding metadata load file.

2.    For each produced native file, the Producing Party will provide a static image slipsheet indicating that the document was produced in native format and providing the unique Bates number and confidentiality designation for the corresponding native file.  Any confidentiality designation will also be provided in the

corresponding load file and appended to the unique document number used as the file name for the produced native document.

3. If a document produced in native format is used at a trial or other proceeding (such as at a deposition), the slipsheet created for subsection b above (containing the unique Bates number and confidentiality designation) must be attached to the front of the document.

4. If a document that otherwise would be produced in native format requires redaction, such documents may be produced in TIFF format in accordance with this Protocol, or as a redacted native file.

5. For each document produced in native format, the Producing Party will provide all non-privileged metadata contained in the field identified in Exhibit B.

6. File Naming Convention for Native Format: If production is made in native format, a unique document number shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file.  An example of this convention would be: "ABC0000001-CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER IN CROP INPUTS, MDL NO. 2993.doc". If a printed version of a natively produced document is used in this litigation as an exhibit at a deposition, a hearing, at trial, or in a filing:

     a.     OPTION 1: the placeholder slipsheet should be attached as a coversheet for authentication purposes.

     b.     OPTION 2: the printed pages shall bear the Bates number of the original native format file, as appended to include the page number within a four-digit range (e.g. ABC0000001-0001, ABC0000001-0002, etc.) and shall bear the designated confidentiality designation for the document consistent with Section 5 of the Protective Order (e.g., "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER IN CROP INPUTS, MDL NO. 2993")

**D.**    **Requests for Other Native Files:**  Other than as specifically set forth above, a producing Party need not produce documents in native format.  If a Party would like a particular document produced in native format and this ESI Protocol does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format.  The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format.

**E.**    **Bates Numbering:**

1.    All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters or embedded spaces;

(4) be sequential within a given document; and (5) identify the producing Party.

2.     The producing Party will brand all TIFF images in the lower right-hand corner of the page but shall not obliterate or obscure any part of the underlying images.

F.     **Parent Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable.  DISPUTED PROVISION

G.     **Hyperlinks:** DISPUTED PROVISION

H.     **Entire Document Families:** DISPUTED PROVISION

I.     **Load Files:**  All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) and a metadata (.dat) file with the metadata fields identified below on the document level to the extent available.  The load file must reference each TIFF in the corresponding production.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load files in the production.

J.     **Color:**  Documents or ESI containing color need not be produced initially in color.  However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting

Party may, in good faith, request that the document or ESI item be produced in its original colors.  For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color.  The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI).  All requirements for productions stated in this ESI Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format.  Requests that a document be produced in color for the reasons set forth in this Section will not be unreasonably denied by the producing Party.  If a producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

K.     **Confidentiality Designations:**  If a particular paper document or ESI item qualifies for confidential treatment pursuant to the terms of the Protective Order entered by the Court in the Litigation, or to any applicable federal, state, or common law (e.g., Personally Identifiable Information or Protected Health Information), the designation shall be branded on the lower left-hand corner of the page as set forth in the Stipulation for Protective Order.  The Parties shall use reasonable measures to ensure that any  such branding does not obscure any part of the underlying image.  No additional branding or designation made in reference to the document request to which a document may be responsive is required. Failure to comply with the procedures set forth in this ESI Protocol, any protective order or

confidentiality order, or any confidential stipulation shall not waive any protection or confidential treatment.

L. **Redactions:** <mark>DISPUTED PROVISION</mark>

M. **Production Media & Protocol:**   A producing Party may produce documents via readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"), or via file-sharing service, including any network-based secure file transfer mechanism or Secure File Transfer Protocol.  Any requesting Party that is unable to resolve any technical issues with the electronic production method used for a particular production may request that a producing Party provide a copy of that production using Production Media.

The producing Party may encrypt Production Media, and will provide a decryption key to the requesting Party in a communication separate from the production itself.  If used, each piece of Production Media must be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media, as well as the sequence of material in that production.  For example, if the production comprises document images on three DVDs, the producing Party may label each DVD in the following manner:  "[Party] Production January 1, 2020-001," "[Party] Production January 1, 2020-002," and "[Party] Production January 1, 2020-003."

Each production should include a transmittal letter that includes (1) the production date, (2) the Bates range of the materials included in the production, and (3) a brief description of the production.

3.   **PAPER DOCUMENT PRODUCTION PROTOCOLS**

A.   **Production:**  A producing Party may make paper documents available for inspection and copying in accordance with Federal Rule of Civil Procedure 34 or, additionally or alternatively, scan and OCR paper documents.  The Parties agree that to the extent that the Producing Party elects to produce hard copy documents in electronic format, such documents will be produced as single page Group IV Tagged Image File Format (.TIF or .TIFF) files as described above. The Parties agree that the Producing Party also produce searchable optical character  recognition ("OCR") text of scanned paper documents consistent with the  specifications for Searchable Text set forth above.

B.   **Scanning:**  In scanning paper documents, distinct documents should not be merged into a single  record, and single documents should not be merged into compound records (*i.e.*, paper  documents should be logically unitized). In the case of an organized compilation of separate documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields.   The Parties shall use  reasonable  efforts  to  unitize  documents

correctly, and will commit to address situations where there are improperly unitized documents.

C.    **File Folders and/or Documents Affixed to Hard Copies:** The      Parties agree that any file folders and/or documents affixed to hard copy documents will be scanned as separate documents.

D.    **Load File:** The Parties agree to provide the appropriate load/unitization files in accordance with attached Exhibit A and  consistent with the specifications for such files set forth in Section 2.H, above.

4.    **ESI METADATA FORMAT AND PROCESSING ISSUES**

A.    **Files Not Amenable To Conversion:** If the Producing Party identifies file types that are not amenable to conversion into TIFF images and which may not be easily produced in native file format, the Producing Party shall inform the Requesting Party and the Parties will meet and confer.  If necessary to prevent the delay of a production while the meet and confer process is taking place, any such non-convertible files may be temporarily produced in the form of a placeholder TIFF image.

B.    **System Files:**  ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing.  Other file types may be added to the list of excluded files if they clearly do not have user-created content and by agreement of the Parties.

C.    **Metadata Fields and Processing:**

1.    **Date and Time:**  No party shall modify the date or time as contained in any original ESI.

2.    **Time Zone:**  <mark>DISPUTED PROVISION</mark>

3.    **Auto Date/Time Stamps:**  When processing ESI for production as a static image, the Parties agree that "Auto Date"  be forced off, and "hidden columns or rows", "hidden worksheets", "speaker notes", "track changes", "comments"  and other similar information viewable in the native file be forced on such that the information is preserved to the extent practical and appears on the produced image file.

4.    **Metadata Fields:**  Except as otherwise set forth in this ESI Protocol, ESI files shall be produced with at least each of the data fields set forth in Exhibit B that can reasonably be extracted from a document. The Parties are not obligated to manually populate any fields in Exhibit B that cannot be extracted from the document using automated processes with the exception of Custodian, BegBates, EndBates, BeginAttach, EndAttach, Confidentiality, and Redacted.

D.    **Email Collection and Processing:**

1.    **Email Threading:** <mark>DISPUTED PROVISION</mark>

2.    **Email Domains:**  Producing Parties may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email, such as fantasy

football-related emails, retailer advertising, and newsletters or alerts from non-industry sources.  To the extent a Party opts to exclude uniquely identifiable email domain names (e.g., emails from domains typically associated with junk or irrelevant topics like sports, fantasy team competitions, retailer advertising, and newsletters or alerts from non-industry sources) as part of its initial filter of potentially responsive documents, the Parties agree to disclose domain names excluded under this paragraph and to meet and confer on the timing for such disclosures.

E.   **De-duplication:**  The Parties shall make reasonable efforts to deduplicate ESI.  Parties may deduplicate stand-alone documents or entire document families vertically within each custodian or horizontally (also referred to as globally) across custodians.  ESI will be considered duplicative if it has matching MD5 or SHA-1 hash values.  Documents with the same content but different metadata can also be identified through the use of near-duplication technology, provided that only documents identified by such technology as 100% near-duplicates shall be considered duplicates for purposes of this paragraph. When comparing document families, if a parent document is an exact duplicate but one or more attachments or embedded files are not exact duplicates, neither the attachments nor embedded files, nor the parent document, will be deduplicated. Attachments to emails shall not be eliminated from their parent emails by deduplication.  A list of all custodians who were in possession of the

document, including those whose copy of the document was removed during deduplication, should be placed in the "DUPLICATE_CUSTODIAN" field, with each entry separated by a semi-colon (;) character, as set forth in Exhibit B.

F.   **Zero-byte Files:**  The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names.  If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file.  The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

G.   **Hidden Text:**  ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

H.   **Embedded Objects:**  Embedded Objects in an ESI file are to be extracted or suppressed at processing.  Some file types may contain embedded objects, typically found in the following productivity types:  MS Excel, MS Word, MS PowerPoint, MS Project, MS Outlook, MS Access, as well as Adobe Acrobat (PDF).  The parties may address objects embedded within these files in one of two ways: (1) by extracting such embedded files as separate files and producing them as attachments to the file in which they were

embedded if the file in which these objects are embedded is produced, with the exception of image files (JPG, PNG) embedded in email signature blocks, or (2) by suppressing such embedded files if they are of a type identified in Section 1(G)(6)-(9).

I.    **Compressed Files:** Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure any compressed file within a compressed file is decompressed into the lowest possible compressing resulting in individual files.

J.    **Password-Protected, Encrypted, or Proprietary-Software Files:** DISPUTED PROVISION

K.    **Enterprise or Relational Databases:** DISPUTED PROVISION

L.    **Format of Prior-Production Documents:** If documents produced for litigation or other court or regulatory matter outside of this matter are discoverable, such documents may be produced to the Requesting Party in this matter in the production format from the prior production. The Requesting Party may thereafter request a meet and confer regarding the form, content, or adequacy of any such production including this provision.

M.    **Language:** A hard-copy document or ESI that contains a natural language other than English, in whole or in part, shall be produced in the original language. A Producing Party is under no obligation to prepare English translations of non-English language documents or ESI.

17

5. **DOCUMENT SOURCE SCOPE AND DISCLOSURE PARAMETERS**

 A.     **Time Period:** The Parties agree that ultimately they will be able to limit the processing of discoverable information to that which was created, modified, sent, or received during a particular time period. However, if the Parties cannot agree on what that time period will be, they will raise the issue with the Court.

 B.     DISPUTED PROVISION

6. **PARAMETERS FOR CULLING OF PAPER AND ESI DOCUMENTS**

 A.     DISPUTED PROVISION

7. **CLAIMS OF PRIVILEGE AND REDACTIONS**

 A.     **Production of Privilege Logs:** For all responsive documents withheld in their entirety for privilege, the Producing Party will produce a privilege log explaining the documents withheld. The privilege log will be produced in MS Excel format or any other format that permits electronic sorting and searching.

 B.     **Exclusions from Logging Potentially Privileged Documents:** The following categories of documents do not need to be contained on a producing Party's privilege log, unless good cause exists to require that a Party do so.

  1.     Information generated before the beginning of the relevant discovery period agreed to by the Parties or ordered by the Court. While reserving all rights with respect to the relevant time period for discovery, the Parties agree that information generated after

January 8, 2021, also need not be logged.  This provision does not apply to non-Parties to the Litigation.

2.      Any communications exclusively between a producing Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or, with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts in connection with specific litigation.

3.      Any privileged materials or work product created by or specifically at the direction of a Party's outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or, with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts in connection with specific litigation.

Duplicative emails need not be reflected on the Party's privilege log.  When there is a chain of privileged emails, and the senders and recipients do not change during email chain, the Producing Party need only include one entry on the privilege log for the entire email chain, and need not log each email message contained in the chain separately.

C.      **Privilege Log Requirements:**

1.      **Metadata Log:**  To the extent applicable, each Party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect protected information) and

an indication of the privilege being asserted or type of private personal information being protected.

    a.    Objective metadata includes the following:

      i.    A unique privilege log identifier

      ii.    CUSTODIAN

      iii.    DUPLICATE_CUSTODIAN

      iv.    FILENAME

      v.    SUBJECT

      vi.    AUTHOR

      vii.    FROM

      viii.    TO

      ix.    CC

      x.    BCC

      xi.    DATESENT

      xii.    DATERCVD

      xiii.    CREATEDATE

2.    **Attorney or Description of Privileged Material:** DISPUTED PROVISION

3.    **Email Chains**: DISPUTED PROVISION

4.    **Redaction of Metadata**: The Parties reserve the right to redact or otherwise modify the SUBJECT, FILENAME, and FILEPATH field to avoid disclosing privileged information, so long as the redacted or modified entries are clearly identified and the

information provided is sufficient to allow the other Party to assess the basis for the asserted privilege(s).

5.     **Manually Populating Certain Metadata:** Further, a Party must manually populate on its privilege log an author and date for any withheld document where that information is not provided by the objective metadata, unless such information is not reasonably discernable from the document or the information is not necessary to evaluate the claim of privilege in light of the metadata that is discernable and/or the information provided in the Attorney/Description of Privileged Material field.

6.     **Privilege Redactions:** DISPUTED PROVISION

D.     **Challenges to Privilege Claims:**     Following the receipt of a privilege/redaction log, a requesting Party may identify, in writing (by Bates/unique identification number), the particular documents that it believes require further explanation.  The producing Party shall endeavor to respond to such a request within 14 days.  If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution.  If they cannot agree, the matter may be brought to the Court.

8.     **<u>MISCELLANEOUS PROVISIONS</u>**

A.     **Inaccessible ESI:** If a Producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible or otherwise unnecessary under the circumstances, or if the

Requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer to discuss resolving such assertions. If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue may be presented to the Court for resolution.

B.     **Variations or Modifications:**  Variations from this ESI Protocol may be required.  Any practice or procedure set forth herein may be varied by agreement of all affected Plaintiffs and all affected Defendants, with reasonable notice to and consultation of any other Party to this Litigation, which will be confirmed in writing.  In the event a producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the producing Party will notify the requesting Party of the variation or modification.  Upon request by the requesting Party, those Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

IT IS SO STIPULATED, through Counsel of Record.

/s/ Michelle J. Looby
**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson (202241 MN)
Michelle J. Looby (0388166 MN)
Daniel C. Hedlund (258337 MN)
Daniel J. Nordin (0392393 MN)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
mlooby@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

/s/ W. Joseph Bruckner (w/consent)
**LOCKRIDGE GRINDAL NAUEN
P.L.L.P.**
W. Joseph Bruckner (0147758 MN)
Rebecca A. Peterson (241858 MN)
Robert K. Shelquist (21310x MN)
Brian D. Clark (0390060 MN)
100 Washington Avenue So., Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
rapeterson@locklaw.com
rkshelquist@locklaw.com
bdclark@locklaw.com

/s/ Sterling Aldridge (w/consent)
**BARRETT LAW GROUP, P.A.**
John W. "Don" Barrett (2063 MS)
Sterling Aldridge (104277 MS)
Katherine Barrett Riley (99109 MS)
David McMullan, Jr. (8494 MS)
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628
dbarrett@barrettlawgroup.com
saldridge@barrettlawgroup.com
kbriley@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

/s/ Derek Y. Brandt (w/consent)
**McCUNE WRIGHT AREVALO, LLP**
Derek Y. Brandt (6228895IL)
Leigh M. Perica (6316856IL)
Connor P. Lemire (704702MA)
231 N. Main Street, Suite 20
Edwardsville, IL 62025
Telephone: (618) 307-6116
dyb@mccunewright.com
lmp@mccunewright.com
cpl@mccunewright.com

*Plaintiffs' Liaison Counsel*

*Plaintiffs' Interim Co-Lead Class Counsel*

_____

*/s/ Sharon B. Rosenberg (w/consent)*
**THOMPSON COBURN LLP**
Sharon B. Rosenberg
One US Bank Plaza
St. Louis, MO 63101
Telephone: (314) 552-6000
srosenberg@thompsoncoburn.com

***Counsel for Defendants Bayer CropScience
LP and Bayer CropScience Inc. and as
Defendants' Liaison Counsel***

**EXHIBIT A**

**Fields for Production of Paper Documents Converted to Static Images**

Note: The chart below describes the fields to be produced with the Load / Unitization Files in generic, commonly used terms.  Field names may vary from the below.

| Field | Definition |
| --- | --- |
| CUSTODIAN | Name of person from whose files the document is produced |
| BEGBATES | Beginning Bates Number (production number) |
| ENDBATES | End Bates Number (production number) |
| BEGATTACH | First Bates number of family range (i.e., Bates number of the first  page) |
| ENDATTACH | Last Bates number of family range (i.e., Bates number of the last  page of the last attachment) |
| PGCOUNT | Number of pages in the document |
| TEXTPATH | File path for OCR or Extracted Text files |

**EXHIBIT B**

**Fields for Production of ESI**

Note:  The chart below describes the fields to be produced with  the Load / Unitization Files in generic, commonly used terms.  Field names may vary from the below.

| Field | Doc | Definition |
|-------|-----|-----------|
| CUSTODIAN | All | Name of person from whose files the document is produced |
| DUPLICATE_CUSTODIAN | All | Custodian, plus any additional Custodian(s) who had a duplicate copy removed during global deduplication (with each Custodian separated by a semicolon (;) character) |
| BEGBATES | All | Beginning Bates Number (production number) |
| ENDBATES | All | End Bates Number (production number) |
| BEGATTACH | All | First Bates number of family range (i.e., Bates number of the first page) |
| ENDATTACH | All | Last Bates number of family range (i.e., Bates number of the last page of the last attachment) |
| PGCOUNT | All | Number of pages in the document |
| FILETYPE/APPLICATION | All | Application used to create document |
| FILEEXT | All | File extension of the native file (e.g., XLS, DOC, PDF) |
| FILEPATH | eDocs | File source path for all electronically collected documents, which includes location, folder name |
| FILENAME | eDocs | File name of the original electronically collected documents |
| DOCTYPE | All | Descriptive field created by the vendor processing software (e.g. email, edoc, image, attachment) |

| HASHVALUE | All | MD5 Hash or SHA Value created during processing |
|---|---|---|
| FROM | eMail | Sender of email |
| TO | eMail | Recipient of email |
| CC | eMail | Additional Recipients of email |
| BCC | eMail | Blind Additional Recipients of email |
| SUBJECT | eMail | Subject line of email |
| DATESENT | eMail | Date and time sent |
| DATERCVD | eMail | Date and time received |
| TITLE | eDoc | Title field value extracted from the metadata of the native file. |
| AUTHOR | eDoc | Creator of a document |
| LASTAUTHOR | eDoc | Last Saved By field contained in the metadata of the native file |
| CONFIDENTIALITY | ALL | Confidentiality designation for documents produced in native format |
| REDACTED | All | Should be populated if a document contains a redaction |
| NATIVEFILELINK | All | For documents provided in native format |
| TEXTPATH | All | File path for OCR or Extracted Text files |
| CREATEDATE | eDoc | Date created |
| LASTMODIFIEDDATE | eDoc | Last modified date |
| EMAILTHREADID | eMail | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length that facilitate email threading. |
| EMAILTHREADINDEX | eMail | Message header identifier, distinct from "PR_CONVERSATION_INDEX", that permits threading of email chains in review software. |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 10, 2021, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

 /s/ Michelle J. Looby