# EXHIBIT 1

## DISPUTED PROVISIONS IN ESI PROTOCOL

| Section | Defendants' Provision | Plaintiffs' Provision |
|---|---|---|
| 2.F | A non-responsive or privileged attachment within an otherwise produced family shall be represented in the production by a single page slipsheet indicating the attachment is non-responsive or privileged and appearing in order behind the conveying responsive email. | A non-responsive or privileged attachment within an otherwise produced family shall be produced to maintain parent-child relationships and will appear in order behind the conveying responsive email. |
| 2.G | Documents that are associated by hyperlink or otherwise linked to another location or file without being embedded will not be treated as attached files and will not be produced as if attachments in order behind the document in which they were referenced by link. Such documents will be treated in accordance with their originating location and collected, processed, and produced as governed by the relevant procedures and protocols as outlined in this order for each document's file type and data source. | Links embedded in email and/or communications to resources located on systems controlled by the Producing Party shall be considered attachments and the linked documents will be produced if it is determined that the parent document and/or any attachments are responsive. The Producing Party shall use their best efforts to collect and produce documents that are links in e-mails, including, but not limited to, Google G Suite, Microsoft Office 365, etc. Documents extracted from links shall be populated with the BegAttach and EndAttach metadata fields to maintain the family relationship. |
| 2.H | No Provision | Entire document families must be produced, even if only the parent document or a child document is responsive, except: (1) junk files and non-user-created content routinely excluded during processing, and (2) documents that are withheld on the basis of attorney-client privilege or work product protection. |
| 2.L | **Redactions**<br><br>1. **Attorney-Client Privilege and Attorney Work Product:** A producing Part may redact for claims of attorney-client privilege and attorney work product.<br><br>2. **Personal Data Redactions:** A producing Party may redact personal information to the extent that | Redactions are generally only allowed for claims of attorney-client privilege and attorney work product. However, narrow redactions of non-responsive private personal information belonging to individuals are permitted. Private personal information includes social security numbers, personal bank account numbers, credit card numbers, and personal medical information. If a party identifies additional types of confidential personal information during the course of discovery that it believes should be redacted, the Parties shall meet and confer in an |

| Section | Defendants' Provision | Plaintiffs' Provision |
|---|---|---|
| | the information falls within one of the following categories: (1) the information relates to medical or health issues of an individual or (2) social security numbers, bank account information, or personal passcodes. Such redactions should be identified as "Redacted – Personal Data" on the face of the document.<br><br>3. **Redactions of Nonresponsive Highly Confidential Business Information:** A producing party may redact specific highly confidential business information relating to non-Crop Inputs businesses provided (1) the redacted information is both nonresponsive and irrelevant, and (2) the redacted information would not assist in understanding or providing context for the relevant portion of the document or document family of which it is a part. Such redactions must be identified as "Redacted – Highly Confidential Nonresponsive Information."<br><br>On any page of the document on which information is redacted, the redacted portion shall bear a designation that it has been redacted. Where an entire document is privileged or protected attorney work product, a party may withhold the entire document in a family consistent with the specifications provided in Section 7. Any confidentiality designation will also be provided in the corresponding load file. To the extent that any document produced in a TIFF format contains information that is redacted, those documents shall be produced in the form of a redacted .TIFF | attempt to reach agreement whether such information can be redacted. If agreement cannot be reached, the Producing Party shall file a motion for a protective order seeking permission to redact the information. Any redactions of private personal information should be limited to the private personal information itself. On any page of the document on which information is redacted, the redacted portion shall bear a designation that it has been redacted. When a redaction is made for private personal information, the redacted portion shall bear a designation indicating the type of information redacted. Where an entire document is privileged or protected attorney work product, a party may withhold the entire document in a family consistent with the specifications provided in Section 7. Any confidentiality designation will also be provided in the corresponding load file. To the extent that any document produced in a TIFF format contains information that is redacted, those documents shall be produced in the form of a redacted .TIFF image.  Documents otherwise produced natively, such as spreadsheets, may be redacted and produced in native format and the Parties will ensure that the original data in the redacted spreadsheets will be preserved. |

| Section | Defendants' Provision | Plaintiffs' Provision |
|---|---|---|
| | image. Documents otherwise produced natively, such as spreadsheets, may be redacted and produced in native format and the Parties will ensure that the original data in the redacted spreadsheets will be preserved. | |
| 4.C.2 | The parties will endeavor to use Coordinated Universal Time ("UTC") when processing their data. If anything other than UTC is used for processing, the parties shall disclose the time zone used. | The parties will endeavor to use Central Standard Time ("CST") when processing their data. If anything other than CST is used for processing, the parties shall disclose the time zone used. |
| 4.D.1 | In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize threading or "email thread suppression." As used in this Protocol, email thread suppression means employing commercially acceptable methods to reduce production of duplicative email threads by producing only the inclusive email messages and their attachments from each email thread. An email message is inclusive when it contains any non-duplicative content or has a document or set of documents attached that does not appear elsewhere within the email thread. Typically, an inclusive email will be either the longest, most recent in time email message containing all of the text from previous, earlier in time email messages within that same thread or an email message with attachments not otherwise attached to a later in time email within that same thread, but any email will be treated as inclusive when it contains non-duplicative content. Accordingly, exact duplicates | The Parties will not suppress email threads in their productions but may do so for the purposes of internal review. This in no way prevents a party from using email threading for purposes of internal review of documents and increasing the efficiency of such review. The Parties also agree that only the most complete version(s) of a redacted email thread must be produced. |

| Section | Defendants' Provision | Plaintiffs' Provision |
|---|---|---|
| | of emails as well as email messages comprised of text identical to text contained within an inclusive email in the same conversation will be suppressed and not produced, however responsive, non-duplicative attachments will be produced along with their conveying email message even when the text of that parent email message is fully represented in a longer, later in time email thread. | |
| 4.J | The Producing Party will take reasonable steps to unencrypt any discoverable ESI that exists in encrypted format (e.g., password-protected) and that can be reasonably unencrypted based on industry standards for production. | The Producing Party will take reasonable steps to unencrypt any discoverable ESI that exists in encrypted format (e.g., password-protected) and that can be reasonably unencrypted based on industry standards for production. In the event that encrypted or password-protected documents which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the Producing Party shall advise the Requesting Party. The Producing Party will take reasonable steps to access any discoverable ESI that exists in a format requiring proprietary software to access and produce such information in a more accessible format. In the event the Producing Party is unable to so produce such ESI requiring proprietary software for access, the Producing Party shall advise the Requesting Party. |
| 4.K | To the extent that the Parties request information from enterprise or relational databases or other structured data (e.g. Oracle, SQL Server, DB2), responsive information contained within a database may be produced by querying the database and generating a flat file report or exportable electronic file (e.g., .CSV) of such data along with relevant fields for review by Requesting Party. | To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file for review by the Requesting Party. Upon review of the report, the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields. |

| 5.B & 6 | The Parties expect to employ one or more search methodologies in order to reduce discovery burdens, including possibly but without limitation the use of search terms, predictive coding, statistical-based sampling, and other advanced search and retrieval technologies to identify potentially relevant ESI, including email. All meet and confer sessions regarding search methodologies will give appropriate consideration to minimizing expense and the Producing Party's ability to best evaluate and determine appropriate procedures, methodologies, and technologies for preserving, collecting, and producing ESI and other documents.<br><br>With the objective of limiting the scope of review and production, the Parties agree to meet and confer to try to develop a mutually agreeable list of custodians, data sources, and, where applicable, search terms for each Party and to identify the time period that may contain responsive documents. Nonetheless, the use of search terms does not require production of non-responsive, irrelevant materials or content merely due to the presence of a search term or search terms, which will be applied to all in scope data sources as a default, if possible. All documents within the responsive time period for the agreed upon custodians and data sources that contain an agreed upon search term for that Party will be analyzed to determine responsiveness and produced as required per this Protocol. | B. | **Document Source Negotiations**<br>1. **Initial Document Custodians and Sources:** <u>Each Party will provide a list of proposed document custodians and non-custodial document sources (e.g., centralized document sources other than an individual document custodian's files) reflecting those employees or sources with information and/or documents responsive to an agreed-on or Court-ordered scope of Rule 34 requests.</u><br>2. **Additional Document Custodians or Sources:** If, after the Parties identify initial document custodians, a Requesting Party believes that additional document custodians or sources should be added, then the Requesting Party shall advise the Producing Party in writing of the proposed additional document custodians or sources and the basis for the request. If the Parties have not agreed whether to add the document custodian or source within 30 days of the Requesting Party's request, then the matter may be brought to the Court.<br>3. Except by agreement of the Parties or by order of the Court, a producing Party is not required to add document custodians or sources after completion of the above steps in Sections **Error! Reference source not found.(Error! Reference source not found.)(Error! Reference source not found.)** and **Error! Reference source not found.(Error! Reference source not found.)(Error! Reference source not found.)**. |

| Section | Defendants' Provision | Plaintiffs' Provision |
|---|---|---|
| | Any search for potentially relevant documents and ESI shall involve searching for such documents in data sources within which such documents and ESI are likely to be most readily accessible. Data sources that are not reasonably accessible because of undue burden shall not be considered for search.<br><br>The Parties agree, however, that production of ESI from such sources shall be required only if the Requesting Party demonstrates a proportional need and relevance that outweigh the costs and burdens of retrieving and processing the ESI.  The Parties will negotiate in good faith with regard to who should bear the costs for the search of sources that are not reasonably accessible.  Should the Parties not reach agreement after negotiations in good faith on whether the Requesting Party's proportional need outweighs the costs and burdens and/or who should bear the cost, the Parties will seek assistance from the Court to resolve the issue. | **6. PARAMETERS FOR CULLING OF PAPER AND ESI DOCUMENTS**<br>A.  **Transparency:**  With the goal of permitting requesting Parties an appropriate level of transparency into a Producing Party's electronic search process, without micromanaging how the Producing Party meets its discovery obligations and without requiring the disclosure of attorney work product or other privileged information, the Parties will endeavor to be reasonably transparent regarding the universe of documents subject to targeted collections or culling via search terms and other limiters (e.g., date ranges and email domains in metadata fields) and/or TAR/CAL.<br>B.  **Pre-Search Deduplication & Culling of Collected Data:**<br>  1.  **De-Duplication:**  Before running either of the Search Processes below in Section B(C), data should be de-duplicated by hash value across all agreed or Court-ordered document custodians.<br>  2.  **Email Threading:**  If the Producing Party's search software has the capability, then the Producing Party may choose to include inclusive emails only in the data set subject to the Keyword and/or TAR/CAL Search Process, including the data set against which keyword searches are tested.  A Producing Party will disclose whether or not they are testing search terms in a set of data that excludes non-inclusive emails.<br>  3.  **Email Domains:**  Should the Requesting Party want certain email domains excluded from the data set against which search terms are tested, the Requesting Party must provide a list of such domain names to the Producing Party ahead of the producing Party's testing of search terms.  Likewise, if the Producing Party identifies domains that it believes should be eliminated, it will |

| Section | Defendants' Provision | Plaintiffs' Provision |
|---|---|---|
| | | produce a list of those domain names to the Requesting Party.<br>4. **Paper Documents:** The Parties agree to meet and confer to determine whether paper documents scanned to electronic form for litigation may be included in any keyword or TAR process.<br>5. **Targeted Collections:** Only documents a Producing Party intends to subject to electronic searching parameters should be included in the data set against which search terms are tested.<br>6. **Exception Reporting:** For any documents not otherwise identified as system or operating files, the Producing Party must disclose processing exceptions that are unresolved at the end of the discovery period, such as documents that cannot be opened due to encryption or other issues.<br>7. **Disclosure of Other Culling Parameters Required:** A Producing Party is permitted to cull data using the agreed-upon custodial and non-custodial sources, agreed-upon date parameters, and agreed-upon search terms (if applicable), and a Producing Party is permitted to remove known system or operating files, such as those that appear on the National Software Reference Library hash list. As such, the Parties may cull entire file directories from computer hard drives that contain Program Files, Program Data, SWTOOLs, Windows Operating System files, etc. For those excluded directories, the Parties will only conduct searches on user-created content that is reviewable and likely to yield relevant content. To the extent a Producing Party elects to use additional culling parameters, those parameters will be disclosed. |

C. **Search Methodology Parameters:** The following TAR/CAL and Keyword Search Processes govern how collected data may be electronically culled in this matter.
  1. **TAR/CAL Search Process:**
     a. **Use of Search Terms with TAR/CAL:**
        i. On a date agreed to by the parties or ordered by the Court, but after agreement between the Parties or an order by the Court on document custodians, the Requesting Party will propose to a Producing Party a limited number of document custodians, not to exceed three individuals, for whom, across their email only, it requests that no search term pre-culling be used prior to applying TAR/CAL during the review process. However, the other data culling parameters described in ESI Protocol may be applied to these document custodians, including to their email.
        ii. After disclosure of a party's proposed search process, the Parties will meet and confer on any issues or disputes regarding the requesting Party's proposals.
     b. **Producing Party TAR/CAL Disclosures:**
        i. On a date as agreed by the Parties or ordered by the Court, a Producing Party that elects to use TAR/CAL will disclose the following information regarding its use of a TAR/CAL process: (a) the name of the TAR/CAL software and vendor, (b) a general description of how the producing Party's TAR/CAL process will work, including how it will train the algorithm, such as using exemplars, keyword search strings, or some other method, (c) a general description of the categories or sources of the documents included

| Section | Defendants' Provision | Plaintiffs' Provision |
|---|---|---|
| | | or excluded from the TAR/CAL process, and (d) what quality control measures will be taken.<br>c. **Requesting Party Response:**<br>   i. After receiving a Producing Party's TAR/CAL Disclosures, the Requesting Party may raise with the Producing Party any concerns with the proposed TAR/CAL process or categories of documents that it proposes should be excluded from the TAR/CAL process. A Requesting Party may also propose any exemplars it proposes be used to train a TAR/CAL tool or narrow keyword search strings it proposes be used to generate exemplars to train a TAR/CAL tool. A Producing Party retains the right to reject and oppose any such requests, subject to resolution by the Court.<br>d. **Cooperation:** The Parties agree to work together in good faith to resolve any differences that they may have over the Producing Party's use of TAR/CAL and its processes, recall, and validation proposals. If an agreement cannot be timely reached, then the Parties agree to raise this issue with the Court.<br>2. **Keyword Search Process:**<br>a. **Iterative Process:** Developing efficient keyword search terms is an iterative process and will require transparent and cooperative efforts by both the Producing and Requesting Party; however, it is important to set certain limits in order to effectively and efficiently manage time and expense.<br>b. **Search Software Disclosures:** On a date as agreed by the Parties or ordered by the Court, the producing Party will disclose any search software they have decided to use (including version number) and that |

| Section | Defendants' Provision | Plaintiffs' Provision |
|---|---|---|
| | | software's default stop/noise words and search language syntax. |
| | | c. **First Phase Search Term Proposals:** |
| | | i. *Producing Party Proposes an Initial Set of Search Terms*: After disclosing its search process to the Requesting Party, the Producing Party will propose a set of search terms. The Producing Party's proposal will include, to the extent known, semantic synonyms and common spellings of the keywords proposed. Where a Producing Party seeks to exclude false positives (aka, "noise hits") by modifying or excluding certain keywords, then it will supply contextual examples of such false positives to explain why they must be excluded. |
| | | ii. *Requesting Party's Proposed Revisions*: After receiving the initial proposed search terms, the Requesting Party will provide any proposed revisions to the Producing Party's search terms. |
| | | iii. *Producing Party Provides Information Sufficient to Support Its Objections:* After receipt of the Requesting Party's proposed revisions, the Producing Party will provide information sufficient to support its objections to specific search terms. |
| | | iv. *Cooperation*: The Producing Party and the Requesting Party will work together in good faith to reasonably narrow or broaden the number of documents returned via search term hits in an effort to identify relevant documents in an efficient manner. To the extent any disputes remain concerning the sufficiency of the Producing Party's information in support of its |

| Section | Defendants' Provision | Plaintiffs' Provision |
|---|---|---|
| | | objections and/or the use of specific search terms after good faith negotiations have occurred, either Party may request the assistance of the Court in resolving such disputes. |
| | | d. **Second Phase Search Term Proposals:** |
| | | i. *Requesting Party Proposes an Additional Set of Search Terms*: The Parties agree that Plaintiffs collectively and Defendants collectively may propose additional search terms to a Producing Party one time. On a date as agreed by the Parties or ordered by the Court, the Requesting Party may propose a set of additional search terms. The Requesting Party will explain generally the basis for the additional requested terms, which could include, for example, identifying by Bates number exemplar documents that support the request. |
| | | ii. *Producing Party Provides Information Sufficient to Support Its Objections*: After the Requesting Party provides an additional set of proposed search terms, the Producing Party will provide information sufficient to support its objections to specific additional search terms. |
| | | iii. *Requesting Party and Producing Party Will Meet and Confer Regarding Requesting Party's Proposed Additional Search Terms*: After the Requesting Party proposes an additional set of search terms, the Parties will meet and confer regarding any disputes or counter-proposals regarding the additional search terms. To the extent any disputes remain concerning the sufficiency of the Producing Party's information |

| Section | Defendants' Provision | Plaintiffs' Provision |
|---|---|---|
| | | in support of its objections and/or the use of specific additional search terms after good faith negotiations have occurred, either Party may request the assistance of the Court in resolving such disputes.<br>3. *Good Cause Inability of a Party to Meet the Deadlines Imposed in this Order*: It is expected that the Parties shall make their best efforts to complete the above steps in a reasonable and efficient manner.  The Parties understand that technical (or other) issues or unanticipated volumes may interfere with a Party's best efforts to comply.  Should a Party anticipate that for good cause it may be unable to meet a deadline ultimately agreed between the Parties or ordered by the Court, that Party shall promptly raise the issue with the other Parties, explain the reason for the inability to timely comply, and negotiate a reasonable extension for compliance.  If the Parties are unable to immediately agree upon a revised deadline for compliance, they shall promptly raise the issue with the Court for resolution.  This provision shall not be construed as blanket permission for a Party to modify or extend the ultimate deadlines agreed to by the Parties or ordered by the Court without good cause, but rather, to recognize that when dealing with search and review of large volumes of ESI, there are sometimes legitimate, unanticipated challenges that may interfere with a Party's best efforts to fulfill its obligations and therefore, to afford the Parties reasonable flexibility and mutual accommodation should such eventuality occur.<br>4. **Validation Procedures**: No later than 90 days prior to the time set for substantial completion of document productions, the Parties will either propose an agreed |

|  |  |
|---|---|
|  | Validation Protocol or submit a joint letter brief laying out their competing proposals for such a Validation Protocol. |
|  | D. **Custodial Cellphone & Personal Communications Data:** |
|  | 1. **Cellphones:** For document custodians agreed on by the Parties or ordered by the Court, a Producing Party will take reasonable steps to identify whether any unique responsive communications are located on any cellphones in the possession, custody, or control of the Producing Party.  Unless agreed otherwise, the following shall govern the review and production of unique, responsive, and non-privileged communications for cellphone-based data for the agreed or ordered document custodians with respect to cellphones in the possession, custody, or control of the Producing Party. |
|  | a. Prior to any culling of the cellphone data, a Producing Party will disclose the following to the extent reasonably possible:  (1) to the extent not already provided, a list of cellphone number(s) used by the document custodian for any work purposes, if any, (2) the name of the phone carrier that provided service for each identified phone number, (3) the type of phone, including brand and model number, if known, (4) a list of installed communications-related applications used for any work purposes on the document custodian's cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, WhatsApp and other such applications if such applications are used for any work purposes, and (5) whether or not the Producing Party claims that a cellphone used by the document custodian for any |

| Section | Defendants' Provision | Plaintiffs' Provision |
|---|---|---|
| | | work purposes is not within its possession, custody, or control.<br>b. A Producing Party will review the following sources of information on a cellphone used for work purposes, to the extent reasonably available, to identify unique, responsive, and discoverable information; the Parties will discuss and will not unreasonably oppose methods of culling the below sources for responsive information:<br>　i. **Cellphone Call and Voicemail Logs:** The logs of any calls made/received and voicemails left on a cellphone that the document custodian used for any work purposes, if any, if the cellphone is in the possession, custody, or control of a Producing Party.<br>　ii. **Text Messages:** All text messages and/or iMessages on the cellphone device used for any work purposes or contained in available backups/archives associated with the device, if any, if the cellphone is in the possession, custody, or control of a Producing Party.<br>2. **"Contacts":** The Parties will review a document custodian's relevant contacts (e.g., MS Outlook Contacts or cellphone-based contacts) in the possession, custody or control of a Producing Party. The Parties will discuss and will not unreasonably oppose methods of culling a document custodian's contacts for responsive information. A Producing Party is entitled to redact or withhold information from the contacts file that does not relate to the document custodian's work—including, but not limited to, the name and contact information for any family or friends not involved in the crop inputs industry. |

| Section | Defendants' Provision | Plaintiffs' Provision |
|---|---|---|
| | | If, after reviewing the redactions, the Requesting Party believes that more information is needed about the redactions, then the Parties will meet and confer regarding the information redacted.<br><br>E. **Social Media Data:** If a document custodian confirms that he or she (1) used Social Media for business purposes and (2) used that Social Media to communicate with an employee of another Defendant or otherwise regarding a subject relevant to the Litigation and included within a Request for Production, subject to objections to that Request, then the requested communication(s) must be produced if it is reasonably accessible, in the Producing Party's possession, custody, or control, and not withheld as privileged and/or as illegal to produce under applicable privacy laws. The Parties shall meet and confer to the extent there are any issues with respect to the format of such Social Media data. |
| 7.C.2 | The Parties will also indicate the privilege basis on which each document family was withheld, titled "Attorney Description of Privileged Material" if the basis for the privilege asserted is not apparent from the metadata provided (e.g., the name of the attorney will be provided if not included in the objective metadata). The Parties will also indicate whether or not the logged document has attachments, but will not be required to separately log attachments. | The Parties will also indicate the privilege (or private personal information) basis on which each document was withheld, titled "Attorney Description of Privileged Material" if the basis for the privilege asserted is not apparent from the metadata provided (e.g., the name of the attorney will be provided if not included in the objective metadata; if privilege is not obvious from the participants in the metadata and the email subject, the nature of the privilege should be described; etc.). Attachments that are withheld as being part of a privileged communication must still be logged with metadata, but the description may simply indicate that it is part of the parent privileged communication. |

| Section | Defendants' Provision | Plaintiffs' Provision |
|---|---|---|
| 7.C.3 | For partially-privileged chains of emails that are redacted, a Producing Party may produce only a single, most-inclusive, redacted copy of such email chain except that any unique branches of the email chain must also either be produced separately in redacted form. | If there is more than one branch of (i.e., more than one unique group of recipients of) an email thread, each branch will be individually logged. However, each individual email within the thread need not be logged if the recipients of the email chain are identical. For partially-privileged chains of emails that are redacted, a Producing Party may produce only a single, most-inclusive, redacted copy of such email chain except that any unique branches of the email chain must also either be produced separately in redacted form. |
| 7.C.6 | As an initial production matter, redacted documents need not be logged as long as (a) for emails, the metadata is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is noted on the face of the document; and (b) for non-email documents, the reason for the redaction is noted on the face of the document in the redacted area.  Further, the provisions of the Protective Order entered in this matter are incorporated herein by reference as if fully included herein. | As an initial production matter, redacted documents need not be logged as long as (a) for emails, the metadata is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is noted on the face of the document (for redacted documents where the Requesting Party finds the subject matter indecipherable as a result of redactions, the Requesting Party may request a description of the contents of the document that is sufficient to understand the subject matter of the document); and (b) for non-email documents, the reason for the redaction is noted on the face of the document in the redacted area. After receipt of the production, the Requesting Party may request in good faith that the Producing Party create a privilege log for specific redacted documents, identified by Bates number. |