**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: CROP INPUTS ANTITRUST | ) | 4:21-MD-2993-SEP |
| LITIGATION | ) | |
| | ) | MDL No. 2993 |
| ALL CASES | ) | |

**DEFENDANT FEDERATED CO-OPERATIVES LIMITED'S**
**REPLY MEMORANDUM IN SUPPORT OF 12(B)(2) MOTION**
**TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

I.    THE ABSENCE OF NECESSARY ALLEGATIONS AND ESTABLISHED
      FACTS MAKES CLEAR THAT THERE IS NO PERSONAL JURISDICTION
      OVER FCL IN THIS COURT ......................................................................... 2

II.   PLAINTIFFS CANNOT SATISFY THE REQUIREMENTS FOR SPECIFIC
      PERSONAL JURISDICTION ........................................................................... 5

III.  PLAINTIFFS MISSTATE THE LAW FOR PERSONAL JURISDICTION
      UNDER THE CLAYTON ACT AND RICO ...................................................... 7

IV.   PLAINTIFFS' PROPOSED TEST FOR JURISDICTION BASED ON
      CONSPIRACY ALLEGATIONS IS INCORRECT AND WOULD VITIATE
      PERSONAL JURISDICTION LIMITATIONS .................................................11

V.    PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY ................. 12

CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

## <u>CASES</u>

*1st Technology, LLC v. Digital Gaming Solutions, S.A.*,
  2008 WL 4790347 (E.D. Mo. Oct. 31, 2008) ................................................................. 13, 14

*Ackerman v. Glob. Vehicles U.S.A., Inc.*,
  2011 WL 3847427 (E.D. Mo. Aug. 26, 2011) ....................................................................... 14

*Adarand Constructors, Inc. v. Pena*,
  515 U.S. 200 (1995) ............................................................................................................... 11

*ASI, Inc. v. Aquawood, LLC*,
  2020 WL 5913578 (D. Minn. Oct. 6, 2020) ........................................................................... 9

*Austad Co. v. Pennie & Edmonds*,
  823 F.2d 223 (8th Cir. 1987) ................................................................................................... 7

*Bristol-Myers Squibb Co. v. Super. Ct.*,
  137 S. Ct. 1773 (2017) ...................................................................................................... 1, 14

*Brown v. Kerkhoff*,
  504 F. Supp. 2d 464 (S.D. Iowa 2007) .................................................................................. 10

*Calder v. Jones*,
  465 U.S. 783 (1984) ................................................................................................................. 9

*Cory v. Aztec Steel Bldg., Inc.*,
  468 F.3d 1226 (10th Cir. 2006) ............................................................................................. 10

*Eagle Tech v. Expander Ams., Inc.*,
  783 F.3d 1131 (8th Cir. 2015) ................................................................................................. 6

*Ex Parte Reindel*,
  963 So.2d 614 (Ala. 2007) ..................................................................................................... 12

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021) ............................................................................................................. 6

*Guinness Import Co. v. Mark VII Distribs., Inc.*,
  153 F.3d 607 (8th Cir. 1998) ........................................................................................ 1, 7, 14

*Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*,
  757 F. Supp. 2d 904 (W.D. Mo. 2010) ........................................................................ 9, 10, 11

*Health Care Equalization Comm. of Iowa Chiropractic Soc'y v. Iowa Med. Soc'y*,
    501 F. Supp. 970 (S.D. Iowa 1980) ................................................................. 8, 9

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*,
    238 F. Supp. 2d 174 (D.D.C. 2002) ................................................................. 6

*Hunt v. Nevada State Bank*,
    172 N.W.2d 292 (Minn. 1969) ......................................................................... 12

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007) ............................................................................... 5

*In re Mexican Gov't Bonds Antitrust Litig.*,
    412 F. Supp. 3d 380 (S.D.N.Y. 2019) ............................................................ 5

*Johnson v. Woodcock*,
    444 F.3d 953 (8th Cir. 2006) ................................................................... 1, 8, 9

*Jones v. Micron Tech. Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ............................................................ 5

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ..................................................................................... 9, 11

*Kohler Co. v. Kohler Int'l, Ltd.*,
    196 F. Supp. 2d 690 (N.D. Ill. 2002) ......................................................... 11, 12

*Lakin v. Prudential Secs., Inc.*,
    348 F.3d 704 (8th Cir. 2003) ........................................................................ 6, 9

*Lyons v. Philip Morris Inc.*,
    225 F.3d 909 (8th Cir. 2000) ........................................................................... 7

*Metro Broad., Inc. v. FCC*,
    497 U.S. 547 (1990) ...................................................................................... 11

*MNG 2005, Inc. v. Paymentech, LLC*,
    2020 WL 652660 (E.D. Mo. Nov. 9, 2020) .................................................... 8

*Morgan Distrib. Co. v. Unidynamic Corp.*,
    868 F.2d 992 (8th Cir. 1989) ........................................................................... 4

*Pangaea, Inc. v. Flying Burrito LLC*,
    647 F.3d 741 (8th Cir. 2011) ......................................................................... 13

*Rush v. Savchuk*,
    444 U.S. 320 (1980) ...................................................................................... 12

iii

*Sitzer v. Nat'l Assoc. of Realtors*,
   2019 WL 3892873 (W.D. Mo. Aug. 19, 2019) ...................................................... 8, 10

*Skidmore Energy, Inc. v. KPMG*,
   2004 WL 2008514 (N.D. Tex. Sept. 3, 2004) ........................................................ 8

*Soltex Polymer Corp. v. Fortex Indus., Inc.*,
   590 F. Supp. 1453 (E.D.N.Y. 1984) ...................................................................... 8

*St. Louis v. Am. Tobacco Co.*,
   2003 WL 23277277 (St. Louis, Mo. Cir. Ct. Dec. 16, 2003) ............................... 12

*Steinbuch v. Cutler*,
   518 F.3d 580 (8th Cir. 2008) .......................................................................... 13, 14

*Sumpter v. Am. Tobacco Co.*,
   2000 WL 1449851 (S.D. Ind. May 4, 2000) ......................................................... 10

*Tsai v. Karlik*,
   2014 WL 3687201 (E.D. Mo. July 24, 2014) ......................................................... 9

*Viasystems, Inc. v. EBM-Papst St. Georgen Gmbh & Co., KG*,
   646 F.3d 589 (8th Cir. 2011) ............................................................................... 14

## STATUTES

15 U.S.C. § 22 ............................................................................................................ 8

18 U.S.C. § 1965(b) .................................................................................................... 8

## OTHER AUTHORITIES

Michael Goldsmith, Civil RICO, Foreign Defendants, and ET,
   73 Minn. L. Rev. 1023 (1989) .............................................................................. 8

Plaintiffs' Opposition ("Opp.") fails to address, let alone refute, the principal reasons personal jurisdiction over Federated Co-Operatives Limited ("FCL") is not proper in this Court. The law is well settled that "[w]hen personal jurisdiction is challenged, the plaintiff has the burden of showing that jurisdiction exists[,]" *Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 611 (8th Cir. 1998), and the court's primary consideration must be "the burden on the defendant[,]" *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1776 (2017). Because Plaintiffs have failed to satisfy their burden, this Court should dismiss their claims as to FCL for lack of personal jurisdiction, with prejudice.

*First*, the uncontested facts set forth in FCL's opening memorandum ("Mot."), Dkt. 150, and the accompanying declaration of FCL's Vice President of Finance, Anthony Van Burgsteden ("Decl."), Dkt. 150–1—unrebutted by any allegations in the Consolidated Amended Complaint ("CAC") or otherwise—establish that FCL has no presence, has no employees, and does no crop inputs business in the U.S. Indeed, FCL was not even served with process of this lawsuit in the U.S.; it was served *in Saskatchewan, Canada*. The CAC does not provide any basis for finding constitutional minimum contacts sufficient to show that FCL has availed itself of the benefits of Missouri or any other U.S. state, and consequently there is no basis for the exercise of personal jurisdiction over FCL.

*Second*, there can be no specific jurisdiction over FCL under the Due Process Clause of the Fourteenth Amendment pursuant to the Eighth Circuit's five-factor jurisdictional test.[1] Plaintiffs' Opposition fails to rebut that all five factors the Eighth Circuit finds determinative in assessing

---

[1] Where a state's "long-arm statute is coextensive with constitutional limits," a court "need only determine whether the assertion of jurisdiction over th[e] defendant offends due process." *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006). Because due process forbids the exercise of personal jurisdiction over FCL in this case, the Court need not explore the various long-arm statutes cited by Plaintiffs. *See* Opp. 5–6 & nn. 7–10.

whether specific personal jurisdiction is proper lead to the unavoidable conclusion that there is no jurisdiction over FCL.

*Third*, Plaintiffs fail to offer any response to FCL's explanation why there is no jurisdiction under any federal statute. Mot. 6–12. Plaintiffs cite no allegations demonstrating that FCL has the requisite minimum contacts or, indeed, any contacts that form the basis of their claims of a U.S. conspiracy to boycott crop inputs electronic sales platforms, that would be required for jurisdiction to be proper. *Id.* at 5, 10–11.

*Fourth*, Plaintiffs advance a broad interpretation of "conspiracy" jurisdiction that has no support in the law. The issue is whether FCL has specific relevant minimum contacts with the U.S. It has no such contacts, and conclusory assertions about an alleged U.S. conspiracy cannot overcome this dispositive shortcoming.

*Finally*, recognizing that they cannot make out a prima facie case of personal jurisdiction, Plaintiffs request leave to take jurisdictional discovery of FCL. This request should not be granted. Since at least May 2021, when FCL originally filed 12(b)(2) motions to dismiss against the consolidated amended complaints filed against Defendants in the District of Minnesota and the Southern District of Illinois, Plaintiffs have known that FCL contests the exercise of jurisdiction over it based on its lack of contacts with the U.S. or any relationship to the conspiracy claims Plaintiffs allege. Despite that knowledge, Plaintiffs have failed to come forward with even the bare minimum of allegations that could support personal jurisdiction. Having utterly ignored their burden, Plaintiffs should not now be rewarded with discovery.

## I.      THE ABSENCE OF NECESSARY ALLEGATIONS AND ESTABLISHED FACTS MAKES CLEAR THAT THERE IS NO PERSONAL JURISDICTION OVER FCL IN THIS COURT

Plaintiffs repeatedly have emphasized that their claims are premised on purported impacts on an alleged U.S. crop inputs market. But they do not contest FCL's lack of relevant contacts with

the U.S. As set forth in FCL's opening Memorandum, FCL's lack of relevant contacts conclusively demonstrates that there cannot be any personal jurisdiction over FCL in this Court. Plaintiffs concede—as they must—that:

- FCL is not a U.S. entity. It is a Canadian federated co-operative, federally incorporated pursuant to the Canada Co-operatives Act, and "owned by 164 independent locally-owned member Canadian retail co-operative associations." Decl. ¶¶ 2–3.

- All these Canadian retail co-operatives, which are also FCL's sole member-owners, are in Western Canada. *Id.* ¶ 2. None is in the U.S. *Id.*

- FCL does not now have, and has never had, any U.S. crop inputs customers. *Id.* ¶ 5. The "crop protection and seed products FCL sells are specifically registered for sale in Canada." *Id.* ¶ 4. There is no allegation that any Plaintiff or any members of the alleged classes have done business with FCL.

- FCL's principal offices are in Saskatoon, Saskatchewan, Canada. *Id.* ¶ 3. It does not have any "parents or subsidiaries, affiliates or joint ventures" or "any offices or facilities" or "real estate or personal property" in the U.S. *Id.*

- All of "FCL's officers and directors reside and work in Canada." *Id.*

- FCL "does not maintain an agent for service of process in the United States[.]" *Id.* ¶ 5. Indeed, Plaintiffs know that FCL has no agent for service of process in the U.S. because they were unable to serve FCL with the summons for this lawsuit in any U.S. state. Rather, Plaintiffs' counsel served FCL at its place of business—in Saskatoon, Saskatchewan. Canada. *See, e.g.,* Summonses, Exhibit A attached.

These propositions are undisputed, uncontroverted, and unrebutted. Accordingly, what Plaintiffs are left to do to attempt to salvage their case for jurisdiction is to go outside the bounds of the CAC

in a belated attempt to find some irrelevant, random contact or connection that FCL has with the U.S. Here is the best they were able to come up with:

*First*, Plaintiffs argue that FCL "uses American companies to process electronic information collected by FCL[,]" "contracted with a US software company to 'manage its data[,]'" and "negotiat[ed] contracts with U.S. companies for technical services and financial services." Opp. 2, 11. These arguments are not supported by the CAC. Accordingly, this Court should not consider them. *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief." (citations omitted)). More fundamentally, however, these arguments are *entirely irrelevant*. The software services FCL chooses to use in its business have nothing to do with the claims at issue in this case concerning a purported group boycott of electronic sales platforms for crop inputs in the U.S. If these kinds of arguments were sufficient to find personal jurisdiction in the U.S., every foreign company that used Microsoft Outlook, Amazon Web Services, or any other foundational business service would find itself able to be haled into court in the U.S. That is not, and cannot be, the law.

*Second*, Plaintiffs improperly attempt to embellish the CAC with arguments regarding FCL's alleged contracts with certain of its co-Defendants to suggest somehow these contracts are related to the purported U.S. crop inputs market. The CAC states only that FCL "maintains contracts with each of Bayer, Corteva, BASF, and Syngenta authorizing it to purchase and distribute Crop Inputs and entitling it to special rebates." CAC ¶ 65. Nowhere in the CAC do Plaintiffs allege that these contracts were with these Defendants' U.S. corporate entities, as

opposed to their Canadian subsidiaries,[2] or, most importantly, that these contracts involved the distribution of crop inputs in the U.S., as opposed to in Canada. Plaintiffs do not contest the Van Burgsteden Declaration explaining that FCL does no U.S. crop inputs business.

Setting aside Plaintiffs' exaggerations about the contents of the CAC, one is left with the barebones allegation that in 2018 (over four years after the alleged U.S. conspiracy began), FCL, a *Canadian* federated co-operative doing crop inputs business exclusively *in Canada*, unilaterally expressed concern that the entry of FBN into the *Western Canadian* marketplace through its purchase of Yorkton Distributors (a *Canadian* brick-and-mortar retailer) might negatively affect existing business models of *Canadian* crop inputs sellers. *See id.* ¶ 104 (emphasis added). But this has nothing to do with the U.S. or any alleged conspiracy to boycott crop inputs electronic sales platforms in the U.S. It is activity all centered in *Canada*, which has no bearing on Plaintiffs' alleged U.S. conspiracy. *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (per curiam) ("[a]llegations of anticompetitive wrongdoing [abroad]—absent any evidence of linkage between such foreign conduct and conduct here—"do not provide a sufficient factual basis for the assertion of a domestic conspiracy); *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 921 (N.D. Cal. 2019) (in domestic conspiracy case, refusing to consider allegations of foreign conspiracy investigations); *In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 391 (S.D.N.Y. 2019) (similar).

## II.   PLAINTIFFS CANNOT SATISFY THE REQUIREMENTS FOR SPECIFIC PERSONAL JURISDICTION

As the unrebutted facts discussed above establish, FCL has no contacts with the U.S. sufficient to support jurisdiction. Specific jurisdiction is *only* available where a defendant has

---

[2] Defendants' Joint Reply in Support of Motion to Dismiss Under Rule 12(b)(6), at 11 n.13.

sufficient contacts with a forum state and the plaintiff's cause of action arises out of those precise contacts. *Lakin v. Prudential Secs., Inc.*, 348 F.3d 704, 708 (8th Cir. 2003); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021). Even if Plaintiffs' sparse allegations against FCL were true, they would be insufficient under binding Eighth Circuit precedent for the exercise of specific jurisdiction over FCL.[3]

FCL and Plaintiffs both agree that the relevant framework for this Court to employ is the five-factor test held by the Eighth Circuit to be determinative whether specific jurisdiction is appropriate over a party. Mot. 6; Opp. 3–4, 6–8. These factors are: "(1) the nature and quality of [the party's] contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) [the state's] interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." Mot. 6 (quoting *Eagle Tech v. Expander Ams., Inc.,* 783 F.3d 1131, 1136 (8th Cir. 2015)). In its opening Memorandum, FCL walked through each of these factors individually, explaining why their proper application meant that specific jurisdiction was not appropriate here. Mot. at 7–10. Plaintiffs, on the other hand, barely touch on the Eighth Circuit's test, devoting a sum total of only three paragraphs to their analysis of its application. Opp. 6–8.

Not only did FCL walk through the Eighth Circuit's prescribed principles, it also discussed several cases applying the Eighth Circuit's specific jurisdiction factors and concluding there was *no jurisdiction* over defendants that had more extensive contacts with the forum than are alleged against FCL here. Mot. 8. Thus, no jurisdiction was found, for example:

---

[3]  By not arguing in their Opposition that FCL is subject to general jurisdiction, Plaintiffs have conceded this point. *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

- Over a foreign defendant with U.S. subsidiaries (*Lyons v. Philip Morris Inc.*, 225 F.3d 909, 915 (8th Cir. 2000));

- Over a defendant that sold products to a distributor and importer knowing they would be resold in the forum (*Guinness*, 153 F.3d at 614–15);

- Over a defendant that visited, called, mailed monthly billings to, and used bank and courier services in the forum (*Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226–27 (8th Cir. 1987)).

Mot. 8–9. Plaintiffs do not attempt to distinguish a single one of these cases. Worse, they fail to discuss a single case applying the Eighth Circuit's factors *at all*, let alone a case in which a court found specific jurisdiction over a foreign defendant whose relevant contacts with the U.S. were as limited as are FCL's. Respectfully, this Court should adhere to the unbroken and unrebutted line of authority cited by FCL indicating that FCL should not be subject to specific jurisdiction.

## III.   PLAINTIFFS MISSTATE THE LAW FOR PERSONAL JURISDICTION UNDER THE CLAYTON ACT AND RICO

Plaintiffs also misstate the law for personal jurisdiction under the Clayton Act and RICO, both of which are designed to facilitate litigation in a single U.S. court when all defendants are subject to personal jurisdiction somewhere in the U.S., but not necessarily in the same U.S. district. Section 12 of the Clayton Act thus provides that if properly served, a corporate antitrust defendant may be subject to personal jurisdiction, *inter alia*, in a U.S. district in which it "transacts business." 15 U.S.C. § 22. "A corporation 'transacts business' in a district for purposes of § 12 only if in the 'ordinary and usual sense' it transacts business of a 'substantial character.'" *Health Care Equalization Comm. of Iowa Chiropractic Soc'y v. Iowa Med. Soc'y*, 501 F. Supp. 970, 980 (S.D. Iowa 1980) (citing cases). It is not sufficient for a company to have "a few isolated and peripheral contacts with the particular judicial district." *Id.* (citation omitted). RICO similarly provides that

where one alleged conspirator is subject to personal jurisdiction in a particular U.S. district, "other parties residing in any other [U.S.] district[,]" and properly served in the U.S., may "be brought before the court" if "it is shown that the ends of justice *require*" it. 18 U.S.C. § 1965(b) (emphasis added). RICO's service-of-process provision does not apply to foreign defendants served abroad, like FCL in this case. *Soltex Polymer Corp. v. Fortex Indus., Inc.*, 590 F. Supp. 1453, 1460 (E.D.N.Y. 1984) ("Although RICO authorizes nationwide service of process, it does not, by its very language, authorize service in a foreign country."); *Skidmore Energy, Inc. v. KPMG*, 2004 WL 2008514, at *7 (N.D. Tex. Sept. 3, 2004); *see also* Michael Goldsmith, Civil RICO, Foreign Defendants, and ET, 73 Minn. L. Rev. 1023, 1077–78 (1989) (recommending that Congress amend RICO to allow worldwide service of process).

Most importantly, under both the Clayton Act and RICO, the specific jurisdiction inquiry must comport with constitutional requirements.[4] *Johnson*, 444 F.3d at 955 (statute cannot override "constitutional limits" on the exercise of personal jurisdiction). The limitations imposed by the Clayton Act and RICO are *in addition to* those imposed by the U.S. Constitution. *Id.* These include the requirements that the defendant have certain minimum contacts with the forum and that the plaintiff's claims arise from those contacts. *Tsai v. Karlik*, 2014 WL 3687201, at *1 (E.D. Mo. July 24, 2014); *Lakin*, 348 F.3d at 708. In addition, "[e]ach defendant's contacts must be considered separately." *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 913

---

[4] This is true even under the so-called "independent" reading of Section 12 of the Clayton Act proposed by Plaintiffs, Opp. 9–10, which would detach the Clayton Act's venue restriction from its service-of-process provision; no statute can override constitutional due process limitations on the exercise of personal jurisdiction. Accordingly, the Court need not decide how broadly to construe Section 12 to conclude that it lacks personal jurisdiction over FCL. *Cf. Sitzer v. Nat'l Assoc. of Realtors*, 2019 WL 3892873, at *2–3 (W.D. Mo. Aug. 19, 2019) (declining to resolve Section 12's scope because jurisdiction would have been proper under either interpretation). Besides, this Court has already rejected Plaintiffs' proposed reading of Section 12. *MNG 2005, Inc. v. Paymentech, LLC*, 2020 WL 652660, at *3 n.3 (E.D. Mo. Nov. 9, 2020) ("[T]his Court agrees with [defendant] that Plaintiff must make [a] prima facie showing of personal jurisdiction under the traditional due process requirements.").

(W.D. Mo. 2010) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)); *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually."). Plaintiffs fail to engage with a single one of these authorities. On this basis alone, this Court can resolve this Motion.

Even the authorities cited by Plaintiffs in their Opposition recognize this. *See* Opp. 8. In particular, in *Iowa Medical Society*, the court declined to exercise personal jurisdiction over an out-of-state defendant under the Clayton Act because the plaintiff "offer[ed] no supporting evidence" for its jurisdictional allegations, even though the court found that jurisdiction was properly exercised over the out-of-state defendant's co-defendants. 501 F. Supp. at 981. The court explicitly took note of the out-of-state defendant's affidavit largely denying relevant activity in the forum (notably, the defendant acknowledged *some* relevant activity within the forum, unlike FCL, which has submitted undisputed and unrebutted evidence to the Court that it has not engaged in any U.S. crop inputs business). *Id.*[5]

Plaintiffs egregiously miscite *Sitzer*, 2019 WL 3892873, at *4–5 for the proposition that "it is irrelevant that FCL does not have offices, facilities, or employees in this District and is not registered in Missouri." Opp. 9. *Sitzer* says no such thing. *Sitzer* says that although a defendant had no "office, facilities, or employees in this District" and was "not registered to do business in Missouri," it was still appropriate to exercise personal jurisdiction over the defendant because,

---

[5]  *ASI, Inc. v. Aquawood, LLC*, 2020 WL 5913578, at *7 (D. Minn. Oct. 6, 2020), cited by Plaintiffs at Opp. 5, 11, is simply irrelevant. In that case, the court concluded *sua sponte* it could exercise personal jurisdiction over an Iowa RICO defendant in Minnesota because the court had "already found that it has personal jurisdiction over every other RICO defendant," including certain Hong Kong defendants that the court found had sufficient relevant contacts with the U.S. Plaintiffs fail to acknowledge that in *ASI*, the Iowa defendant never even specifically challenged the exercise of personal jurisdiction over it. Mem. ISO Mot. to Dismiss, *ASI v. Aquawood, LLC*, Case No. 0:19-cv-00763 (JRT/HB) (D. Minn. Sept. 10, 2019), Dkt. 82. Here, FCL is a foreign—not merely an out-of-state—defendant, and it has expressly challenged this Court's power to exercise personal jurisdiction over it.

*inter alia*, the defendant had tens of thousands of members in the district from which the defendant received millions of dollars in annual dues; the defendant mandated that its member associations in the district incorporate verbatim provisions into their bylaws, submit their rules and regulations to the defendant for approval, and adopt the defendant's policies; and the defendant partnered with numerous organizations in the district, including at minimum a marketing organization and a trade association, for various services involving at least hundreds of thousands of dollars and hundreds of personnel. 2019 WL 3892873, at *4. That is in stark contrast to FCL's undisputed lack of relevant contacts with the U.S. here.

In addition, Plaintiffs again fail to distinguish a single case cited by FCL where personal jurisdiction was found not to exist over RICO defendants with more extensive contacts with the forum than FCL is alleged to have here. Mot. 11 (citing *Hallmark*, 757 F. Supp. 2d at 911–14 (no jurisdiction over RICO defendant even though it was alleged, with supporting facts, to have been part of conspiracy); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1233 (10th Cir. 2006) (no jurisdiction over RICO defendants who had "limited contact" (but not no contact) with forum); *Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 510–12 (S.D. Iowa 2007) (similar); *Sumpter v. Am. Tobacco Co.*, 2000 WL 1449851, at *14 (S.D. Ind. May 4, 2000) (no jurisdiction over alleged co-conspirator even though its allegedly misleading advertisement was published in newspapers in forum)).

To reiterate, this Court has not been presented with a single case in which personal jurisdiction was exercised over a foreign defendant under the Clayton Act or RICO under facts as sparse and limited as those alleged in the CAC. Nothing about this case warrants a novel reading of the Clayton Act or RICO that would expand their reach beyond what any other court has done.

## IV.   PLAINTIFFS' PROPOSED TEST FOR JURISDICTION BASED ON CONSPIRACY ALLEGATIONS IS INCORRECT AND WOULD VITIATE PERSONAL JURISDICTION LIMITATIONS

Plaintiffs' proposed rule for personal jurisdiction based on conclusory, vague allegations of participation by a Canadian co-operative in a purported U.S. conspiracy is even more unlimited and constitutionally untethered. Plaintiffs argue that so long as they *assert* that FCL participated in a U.S. crop inputs conspiracy—even without any supporting factual allegations, and even though FCL indisputably does no crop inputs business in the U.S.—FCL should be subject to personal jurisdiction in the U.S. merely because some of its co-Defendants are subject to personal jurisdiction. Opp. 11–14. If this were the standard, constitutional due process limitations on personal jurisdiction would be utterly vitiated. Unsurprisingly, it is not.

As noted above and in FCL's opening brief, the U.S. Constitution requires that "[e]ach defendant's contacts must be considered *separately*" for purposes of personal jurisdiction. *Hallmark*, 757 F. Supp. 2d at 913 (emphasis added) (citing *Keeton*, 465 U.S. at 781 n.13); *see Metro Broad., Inc. v. FCC*, 497 U.S. 547, 636 (1990) (Kennedy, J., dissenting) ("[O]ur Constitution protects each citizen as an individual, not as a member of a group."), *overruled by Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995). Thus, even courts applying the constitutionally dubious "conspiracy theory of personal jurisdiction" have held that "[s]imply alleging that a defendant participated in a conspiracy and that another member of the conspiracy committed an unlawful act in the forum state is not enough to reach a nonresident co-conspirator." *Kohler Co. v. Kohler Int'l, Ltd.*, 196 F. Supp. 2d 690, 697 (N.D. Ill. 2002). Plaintiffs not only neglect to address this authority, they ignore it, while pretending that it favors their position. For example, in citing *Kohler*, 196 F. Supp. 2d at 696–98, Plaintiffs fail to acknowledge the above-quoted limitation on the jurisdiction theory asserted by the *Kohler* court. Opp. 12 n.18. Plaintiffs also fail to engage with any binding contrary authorities. *See, e.g.*, *Rush v. Savchuk*, 444 U.S. 320 (1980).

Plaintiffs offer additional misleading citations. For example, Plaintiffs imply that *Hunt v. Nevada State Bank*, 172 N.W.2d 292, 311 (Minn. 1969) supports their position. It does not. In *Hunt*, it was "undisputed that the great majority of defendants, both corporate and individual, were present at the important [in-forum] meeting" in which the allegedly problematic sale was consummated. *Id.* at 311. The forum in question, Minnesota, indisputably had "significant contacts *with all the defendants*." *Id.* at 312 (emphasis added). Each of the defendants was a party to the allegedly unlawful contract that was governed by Minnesota law. *Id.*[6] Here, by contrast, Plaintiffs have failed to dispute that FCL does no U.S. crop inputs business whatsoever.[7] Accordingly, there is no basis for the assertion of "conspiracy" jurisdiction over FCL.

## V.    PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY

As a last-ditch effort, Plaintiffs ask that this Court grant them jurisdictional discovery. Opp. 14–15. But to grant such discovery under these circumstances would be to permit Plaintiffs to

---

[6] Besides these authorities, Plaintiffs cite a slew of state court cases allegedly applying a broad theory of personal jurisdiction that they assert permits the exercise of personal jurisdiction over FCL. Opp. 12 n.18. Conveniently, however, Plaintiffs do not provide a single substantive parenthetical stating the purported rule from one of these cases. *Id.* If they had, one more readily would be able to see that in none of these cases was a foreign defendant that denied, with supporting evidence, any relevant contact with the U.S. subject to personal jurisdiction based solely on the activities of its alleged co-conspirators. In some instances, these cases even say the opposite of what Plaintiffs imply. *See, e.g.*, *St. Louis v. Am. Tobacco Co.*, 2003 WL 23277277, at *7 (St. Louis, Mo. Cir. Ct. Dec. 16, 2003) ("Thus, the Court finds that personal jurisdiction cannot constitutionally be obtained over B.A.T. Industries based on the imputed forum-related conduct of other, non-affiliated Defendant companies who are alleged to be 'co-conspirators' with B.A.T. Industries.").

[7] Plaintiffs also advance the argument that by failing to deny participation in the alleged U.S. crop inputs conspiracy in the Van Burgsteden Declaration, FCL implicitly admitted to the conspiracy. Opp. 14. Not so. Mr. Van Burgsteden made clear—and Plaintiffs do not rebut—that FCL could not have conspired to boycott U.S. electronic crop inputs sales platforms thus purportedly raising prices on U.S. crop inputs when it has only Canadian crop inputs customers and does no U.S. crop inputs business. It is telling that Plaintiffs' authority for this proposition is an Alabama state court decision not binding on this Court, *Ex Parte Reindel*, 963 So.2d 614 (Ala. 2007), and worse yet, Plaintiffs take that court's statement out of context. Unlike the plaintiff in *Reindel*, Plaintiffs here have not made any allegations "with particularity" about FCL's alleged problematic conduct in the U.S., *id.* at 624, and FCL obviously denies participation in any alleged U.S. crop inputs conspiracy by submitting undisputed evidence that it has no involvement with that market whatsoever.

burden FCL without having made a single well-pleaded U.S.-based jurisdictional allegation against it. As set forth in FCL's opening Memorandum, and as not contested by Plaintiffs in their Opposition, jurisdictional discovery is improper when a plaintiff has made only "speculative and conclusory assertions about [the defendant's] contacts with the forum state[.]" *Steinbuch v. Cutler*, 518 F.3d 580, 590 (8th Cir. 2008); *see* Mot. 5. Jurisdictional discovery is also inappropriate where the allegations themselves fail to establish a prima facie case of personal jurisdiction, even if the defendant indisputably had some arguably relevant (but constitutionally insufficient) contact with the forum (much more than is alleged against FCL here). *See Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 746–49 (8th Cir. 2011) (finding no personal jurisdiction, and denying jurisdictional discovery, where defendants visited forum state to discuss plaintiff's trademark, and then engaged in alleged trademark infringement outside the forum).

To support their request for discovery, Plaintiffs resort again to inapt citations to other authorities. *See* Opp. 15. For example, Plaintiffs omit the explicit statement from *1st Technology, LLC v. Digital Gaming Solutions, S.A.*, 2008 WL 4790347, at *6 (E.D. Mo. Oct. 31, 2008) that "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." Opp. 15. Thus, in *1st Technology*, jurisdictional discovery was permitted only because the plaintiff "pointed to some ambiguity surrounding [the defendant's] ownership and supervision of . . . an interactive website that allows users to download the allegedly infringing software" which, if downloaded by Missouri residents, may have meant that the defendant "committed a tort in Missouri." 2008 WL 4791347, at *6. Here, by contrast, FCL has explicitly denied, and Plaintiffs have failed to contest, that it does any U.S. crop inputs business.

Similarly, in *Ackerman v. Glob. Vehicles U.S.A., Inc.*, 2011 WL 3847427, at *2 (E.D. Mo. Aug. 26, 2011), the court quoted the Eighth Circuit for the proposition that "[w]hen a plaintiff offers only speculation or conclusory allegations about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." (quoting *Viasystems, Inc. v. EBM-Papst St. Georgen Gmbh & Co., KG*, 646 F.3d 589 (8th Cir. 2011)). The court in *Ackerman* allowed jurisdictional discovery only because the defendant "acknowledge[d] that it entered in an agreement with [a domestic corporation]" but contested only whether the agreement "create[d] an agency relationship." *Ackerman,* 2011 WL 3847427, at *2. The defendant further "acknowledge[d] that if an agency relationship did exist, that th[e] Court could have personal jurisdiction over it." *Id.* Unlike in *Ackerman*, FCL here has explicitly denied all involvement with the alleged U.S. crop inputs market, and Plaintiffs have "failed to rebut [FCL's] affidavit[] denying" Plaintiffs' allegations. *Steinbuch*, 518 F.3d at 590. Thus, Plaintiffs are improperly seeking discovery predicated on "only speculative and conclusory assertions." *Id.*

## CONCLUSION

For all the reasons set forth above and in FCL's opening brief and accompanying Van Burgsteden Declaration, Plaintiffs have failed to satisfy their burden of showing that jurisdiction is proper over FCL despite the fact that they have had months to develop their claims.

Accordingly, FCL respectfully requests that the Court grant FCL's 12(b)(2) motion to dismiss for lack of personal jurisdiction, with prejudice.

Dated: January 19, 2022                    Respectfully submitted,

                                           By:   *Michael L. McCluggage*
                                           Michael L. McCluggage
                                           Barack S. Echols
                                           EIMER STAHL LLP
                                           224 S. Michigan Avenue, Suite 1100

Chicago, Illinois 60604
Tel.: 312-660-7600
Fax: 312-692-1718
mmccluggage@eimerstahl.com
bechols@eimerstahl.com

Collin J. Vierra (*admission forthcoming*)
EIMER STAHL LLP
99 South Almaden Boulevard
San Jose, California 95113
Tel.: 669-231-8755
Fax: 312-692-1718
cvierra@eimerstahl.com

*Attorneys for Defendant Federated Co-operatives Limited*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of January 2022, I filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

*Michael L. McCluggage*
Michael L. McCluggage
Barack S. Echols
EIMER STAHL LLP
224 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Tel.: 312-660-7600
Fax: 312-692-1718
mmccluggage@eimerstahl.com
bechols@eimersthal.com

Collin J. Vierra (*admission forthcoming*)
EIMER STAHL LLP
99 South Almaden Boulevard
San Jose, California  95113
Tel.: 669-231-8755
Fax: 312-692-1718
cvierra@eimerstahl.com

*Attorneys for Defendant Federated Co-operatives Limited*

16