# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Chambers of
**Joseph A. Dickson**
United States Magistrate Judge

Martin Luther King, Jr. Federal Bldg.
& U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102
(973-645-2580)

LETTER ORDER

July 5, 2016

*All counsel of record via ECF*

Re:     **In re Liquid Aluminum Sulfate Antitrust Litigation**
         **No. 16-MD-2687 (JLL) (JAD)**

Counsel:

There are multiple preliminary discovery and case management issues pending before the Court: (1) the parties' dispute regarding whether Defendants should be made to provide Plaintiffs' counsel with documents Defendants previously produced to the United States Department of Justice ("DOJ") in connection with a government investigation; (ECF Nos. 140, 141, 144, 149, 168, 175, 183, 187); (2) a proposed stipulation, entered into by the DOJ and counsel for Plaintiffs, that would impose a partial stay of discovery for a period of nine months; (ECF No 167); (3) Defendants Brian Steppig and Vincent Opalewski's joint motion to stay this matter as to them pending resolution of a parallel criminal proceeding (and a proposed stipulation resolving that motion); (ECF Nos. 148, 152, 155, 170, 172, 173, 176); and (4) the parties' dispute regarding whether the Court should enter a preservation order in this matter. (ECF Nos. 178 and 179). Most of these matters have become, to some extent, interrelated and the Court will resolve them simultaneously.

I. **The Status of Discovery and Plaintiffs' Request for**
**Documents that Defendants Previously Provided to the Government**

This case is still in its relative infancy and remains in the pleadings phase. Plaintiffs are required to file a consolidated amended complaint on or before July 19, 2016. (ECF No. 153). Defendants are required to "answer or otherwise move with respect to the consolidated amended complaint on or before 60 days after a consolidated amended complaint is filed." (March 9, 2016 Order at 2, ECF No. 72). Defendants anticipate filing motions to dismiss that amended pleading, and the parties disagree as to whether the Court should permit any discovery until the pleadings have become fixed.

The parties' dispute centers on Plaintiffs' request that the Court immediately compel Defendants to turn over any documents that Defendants previously produced to the DOJ in response to certain subpoenas (the "Government Productions"). (Pl.'s April 22, 2016 Letter at 1, ECF No. 149) ("Plaintiffs are not suggesting going forward with full-blown discovery at this time. What we are requesting is to simply produce another copy of what [Defendants] have already produced to the Government.").[1] Defendants' argument against providing Plaintiffs with copies of the Government Productions is narrow, and now focuses exclusively on whether Plaintiffs are entitled to any discovery prior to the District Court's resolution of Defendants' potential motions to dismiss Plaintiffs' forthcoming consolidated amended complaint. (See, e.g., Tr. of April 26, 2016 Conf. at 13:23-15:5).

---

[1] The Court notes that, during the March 3, 2016 conference in this matter, Plaintiffs also suggested that the parties proceed with full discovery as soon as Plaintiffs file their consolidated amended pleading. (Tr. of March 3, 2016 Conf. at 10:14-7; 11:22-24, ECF No. 130). The Court will address the propriety of such discovery below.

2

While it appeared, at one time or another, that Defendants may have had certain other arguments against turning over their Government Productions, those issues have since been resolved. For instance, during the March 3, 2016 conference in this matter, the Court recognized that the DOJ might have confidentiality concerns given the nature of the subpoenas in question. (Tr. of March 3, 2016 Conf. at 27:25-28:4, ECF No. 130). Plaintiffs have since advised, however, that they conferred with the DOJ on that issue, and the DOJ indicated that it did not oppose the Defendants' provision of their Government Productions to Plaintiffs in this case. (Pls.' April 14, 2016 Letter, ECF No. 141). The Court further acknowledges that, by letter dated April 19, 2016, certain Defendants requested that they "be permitted to make confidential submissions regarding the Government Productions prior to any order regarding discovery." (Defs.' April 19, 2016 Letter at 3, ECF No. 144). Counsel for Kemira Chemicals, Inc. reiterated that request during the April 26, 2016 conference in this matter. (Tr. of April 26, 2016 Conf. at 19:23-20-4) (noting that, if the Court decides to "have all defendants consider producing their documents, Kemira and I'm sure the other defendants are more than willing to meet with [the Court] . . . to make sure you understand the scope of the production, et cetera."). The Court advised that it would like to "have those meetings in the context of this issue obviously, because we're running up on the clock a little bit now", (id. at 20:19-21), and directed that defense counsel could set up such a meeting either by identifying themselves at the conference or by contacting chambers *ex-parte* (Plaintiffs' counsel having no objection). (Id. at 20:11-18). To date, only one Defendant, Geo Specialty Chemicals (which, the Court understands, has already provided certain documents to Plaintiffs) requested such a meeting. To the extent that Defendants have concerns regarding the size or scope of their

3

Government Productions or, in fact, any issue <u>other</u> than the traditional timeframe for discovery, they have not brought them before the Court. Finally, to the extent that any Defendant contended that provision of the Government Productions would subject them to a significant burden (an unlikely proposition, considering that Defendants have already assembled all of the materials in question in connection with the DOJ's investigation), the Court would certainly have considered such an argument. No Defendant has done so and, in fact, one Defendant, Kemira Chemicals, Inc., has explicitly disclaimed such a position. (<u>Id.</u> at 13:23-14:2) ("Your Honor, it's not a burden issue and we're not making a burden argument. But it has to do with the proper staging of litigation and at what point do the plaintiffs and their lawyers have a right to access our files."). Having addressed these potential concerns, the Court will turn to Defendants' argument regarding the timing of Plaintiffs' requested productions.

As noted above, Defendants anticipate filing motions to dismiss Plaintiffs' forthcoming consolidated amended complaint, and contend that the parties should not engage in discovery of any kind (including provision of the already compiled Government Productions) until after the District Court has resolved those motions. The Court may, in its discretion, stay discovery during the pendency of a motion to dismiss. <u>See</u> <u>In re Orthopedic Bone Screw Prod. Liab. Litig.</u>, 264 F.3d 344, 365 (3d Cir. 2001). Such stays, however, are neither automatic nor mandatory. While this Court is mindful of the Court of Appeals' guidance that motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) "should typically 'be resolved before discovery begins,'" <u>Levey v. Brownstone Inv. Group, LLC</u>, 590 F. App'x 132, 137 (3d Cir. 2014) (quoting <u>Chudasama v. Mazda Motor Corp.</u>, 123 F.3d 1353, 1367 (11th Cir. 1997)), that concern is most applicable in

4

situations where a pleading contains limited factual information and the plaintiff seeks to use the discovery process as a "fishing expedition" to try to manufacture a cause of action, id. ("Given what little the complaint tells us, there is nothing reasonable about Levey's expectation that taking discovery would reveal any infringement . . . Indeed, 'were we to reverse the dismissal to here to allow for discovery,' all we would be doing would be providing [him] the opportunity 'to conduct a fishing expedition in order to find a cause of action.'") (citations omitted), and is particularly acute in cases where the costs of discovery figure to be massive (e.g., antitrust cases). See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558-560 (2007).

The Court does not believe that Plaintiffs seek discovery as part of a "fishing expedition" intended to uncover a previously unknown cause of action. Indeed, the Court understands that multiple defendants have either pled guilty or sought leniency from the government regarding the very misconduct Plaintiffs allege. Two individual Defendants are currently involved in a related criminal proceeding pending in this District. While the Court is not making any findings regarding the potential merit of either Plaintiffs' forthcoming amended pleading or Defendants' anticipated motions to dismiss, it appears that Plaintiffs' claims may very well survive, in some form, past the pleadings phase. The Court also recognizes, however, that many Defendants have not admitted to wrongdoing, that certain of Plaintiffs' claims may be subject to dismissal, and that this case is likely to involve the sort of extensive discovery costs that the Supreme Court envisioned in Twombly. The Court has, therefore, declined to endorse the "stipulation" (not signed by any defendant in this case) that Plaintiffs entered into with the DOJ providing for a partial stay of discovery. (ECF No. 167). Plaintiffs' proposed stay, which would curtail interrogatories and

5

depositions but permit full document discovery, (id.), is akin to no stay at all, as much, if not most, of the discovery expenses in this matter, at least in the initial stages, will be related to document discovery. This Court is also mindful of the importance of protecting "the integrity of parallel criminal prosecutions involving common legal and factual issues," as the DOJ and Plaintiffs articulated in their joint letter dated May 17, 2016. (ECF No. 167). This Court, in its discretion, therefore finds that the parties shall not conduct any discovery in this matter, other than that expressly permitted in this Letter Order, pending further Order of the Court.

The Court's concerns regarding the timing, scope, and expense of discovery in this matter (i.e., the same concerns the Supreme Court articulated in Twombly) do not apply with regard to the Government Productions. As Defendants have already compiled that material and produced it to the DOJ, there would be little burden (in effort or expense) associated with making a second copy and producing it to Plaintiffs' counsel. Defendants have not raised any other persuasive arguments in opposition to production. Similarly, the Court is not concerned that allowing Plaintiffs access to the Government Productions will impede any ongoing criminal investigations, as the DOJ has advised that it has no objection to such dissemination. (Pls.' April 14, 2016 Letter, ECF No. 141). Therefore, while the Court will not permit the parties to engage in full discovery, it will require all Defendants (other than Defendants Brian Steppig and Vincent Opalewski) to turn a copy of their Government Productions, if any, over to lead counsel for Plaintiffs.

The Court must first, however, address Plaintiffs' obligation to update the Court regarding the status of their review of documents Plaintiffs previously received from certain Defendants. As multiple Defendants pointed out in their letter dated May 31, 2016, (ECF No. 175), this Court

acknowledged, during the April 26, 2016 conference in this matter, that Plaintiffs had already received approximately two million pages of documents. (Tr. of April 26, 2016 Conf. at 24:2-7). The Court directed Plaintiffs to review those documents and to "see whether there's more forthcoming information from the ACPERA discussions", and observed that "[Plaintiffs] may not need [the Government Productions] to build [their] new complaint." (Id.). By letter dated June 10, 2016, Plaintiffs argued that "the Court did not . . . 'instruct Plaintiffs to review those [previously produced] documents to help determine if, in fact, further production of documents by other defendants is necessary or appropriate.'" (ECF No. 183 at 1) (citation omitted). Plaintiffs are mistaken. That is precisely what the Court directed Plaintiffs to do. (Tr. of April 26, 2016 Conf. at 24:2-7). In any case, the Court did not set a deadline for Plaintiffs to provide that analysis and the Court is mindful that, given the size of the document production in question, it would take a significant amount of time for Plaintiffs to review and digest that information. More importantly, upon further reflection, the Court believes that such a report would be of little utility. Obviously, Plaintiffs' counsel can only speculate as to whether additional, relevant information might be contained in Defendants' Government Productions, or to what extent such information might assist Plaintiffs in drafting their amended pleading. Plaintiffs' counsel would therefore necessarily seek to obtain as much information as possible before filing that pleading, essentially rendering the requirement that Plaintiffs submit a status report expressly reiterating their production request a formality. Therefore, while the Court finds that Plaintiffs failed to comply with the directive to advise the Court regarding their review of the approximately two million pages of documents Plaintiffs' already received in connection with this matter, this does not alter the Court's

7

conclusion. All Defendants (other than Defendants Brian Steppig and Vincent Opalewski) shall turn a copy of their Government Productions, if any, over to lead counsel for Plaintiffs **on or before July 15, 2016**.

## II.    **Defendants Steppig and Opalewski's Motion to Stay**

On April 25, 2016, individual Defendants Brian Steppig and Vincent Opalewski filed a joint motion seeking "to stay [this] litigation as to them until the resolution of the parallel criminal case against them currently pending [in this District] . . . *United States v. Vincent Opalewski and Brian Steppig*, Case No. 2:16-cr-0065 (D.N.J.)." (Motion to Stay at 1, ECF No. 152). To date, no party has filed any opposition to that motion. Indeed, by letter dated June 2, 2016 Plaintiffs' lead counsel submitted a proposed stipulation (signed by counsel for Plaintiffs and counsel for Defendants Steppig and Opalewski) to address that motion by, among other things, staying all litigation as to Defendants' Steppig and Opalewski for a period of nine months. The Court cannot, however, endorse that proposed stipulation in its current form as it: (1) relies on and is intertwined with the proposed, partial stay of discovery that Plaintiffs and the DOJ presented to the Court. (ECF No. 167). As noted above, the Court has rejected that proposal; and (2) would result in the motion to stay remaining unadjudicated on the Court's docket indefinitely.

Instead, mindful of the agreement between Plaintiffs and Defendants Steppig and Opalewski to stay all litigation against those Defendants for a period of nine months, and considering that no other party has filed any response to the motion to stay, this Court crafts the following resolution: First, this civil litigation is completely stayed as to Defendants Steppig and Opalewski through and including March 31, 2017. Second, prior to the expiration of the stay, the

8

parties shall meet and confer to discuss whether the stay should continue, and Defendants Steppig and Opalewski may make an application, whether on consent or otherwise, to continue the stay. Third, if the parallel criminal proceeding against them should resolve prior to March 31, 2017, Defendants Steppig and Opalewski shall so advise the Court. Finally, any party shall have the right to make an application to terminate or modify the stay.

### III.    Plaintiffs' Request for Entry of a Preservation Order

By Order dated February 16, 2016, (ECF No. 2), the Hon. Jose L. Linares, U.S.D.J. reminded the parties "of their duty to preserve evidence that may be relevant to this action," confirmed that "[a]ny evidence preservation order previously entered in any of the transferred actions shall remain in full force and effect until further order of the Court", and directed the parties to "take reasonable steps to preserve all evidence that may be relevant to this litigation" "[u]ntil the parties reach an agreement on a preservation plan or the Court orders otherwise." (Id. at 5). By letter dated June 8, 2016, Plaintiffs advised that they prepared a proposed preservation order and that the parties engaged in a meet and confer to discuss its terms. (Pls.' June 8, 2016 Letter at 1, ECF No. 178). Plaintiffs contend that Defendants refused to meaningfully participate in those discussions, and that Defendants indicated "they would reevaluate their refusal to discuss any plan after Plaintiffs file a Consolidated Amended Complaint." (Id.). Plaintiffs argue that "[a]bsent the immediate entry of [Plaintiff's proposed order] . . . it may be too late to stop the destruction of evidence that could easily have been preserved had the parties discussed the issue." (Id. at 2).

In their response dated June 9, 2016, certain Defendants argued that Plaintiffs' proposed preservation order was unnecessary (as Defendants have already taken adequate steps to preserve

9

potentially relevant documents, as explained in Paragraph E of the parties' February 25, 2016 Joint

Status Update (ECF No. 3)), premature (as Plaintiffs have not yet filed their consolidated amended

pleading), and unfairly overbroad and one-sided. (See generally Defs.' June 9, 2016 Letter, ECF

No. 179).

The Court starts with the basic premise that parties have an ongoing obligation to preserve

potentially relevant information, regardless of whether a court separately orders preservation or

the litigants work out a mutually agreeable preservation protocol. See Fed. R. Civ. P. 26(f)(2); L.

Civ. R. 26.1(d)(3)(a); see also, e.g., Mosaid Techs. Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d

332, 336 (D.N.J. 2004) ("Samsung had notice that this litigation had begun and therefore had an

affirmative obligation to preserve potentially relevant evidence, including technical e-mails.").

"This obligation, backed by the court's power to impose sanctions for the destruction of such

evidence, is sufficient in most cases to secure the preservation of relevant evidence." Young v.

Facebook, Inc., No. 10-cv-3579 (JF), 2010 WL 3564847, *1 (N.D. Cal. Sept. 13, 2010). The entry

of a separate preservation order is, therefore, the exception rather than the rule.

The Court notes that the United States Court of Appeals for the Third Circuit has not yet

addressed the factors a court should consider when determining whether to enter a discovery

preservation order. Case law from various District Courts that have considered the issue, however,

provides helpful guidance and reveals a common theme: the party requesting the order must

establish its necessity.

For instance, in Capricorn Power Co., Inc. v Siemens Westinghouse Power Corp., 220

F.R.D. 429 (W.D. Pa 2004), the United States District Court for the Western District of

10

Pennsylvania created a three-factor balancing test for use "when deciding a motion to preserve documents, things and land." Id. at 433. Specifically, the Capricorn Power court found it necessary to consider:

> 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

Id. at 433-34. The Western District of Pennsylvania formed this test "by molding the factors used in granting injunctive relief with the considerations, policies and goals applicable to discovery." Id. at 433. The United States District Court for the Northern District of California has adopted an essentially identical test. Bright Solutions for Dyslexia, Inc. v. Doe 1, No. 15-cv-1618 (JSC), 2015 WL 5159125, *2 (N.D. Cal. Sept. 2, 2015). In Am. LegalNet, Inc. v. Davis, 673 F. Supp. 2d 1063 (C.D. Cal. 2009), the United States District Court for the Central District of California resolved an application for a preservation order by applying a "streamlined two-pronged standard that 'requires that one seeking a preservation order demonstrate that it is necessary and not unduly burdensome.'" Id. at 1071-72 (quoting Pueblo of Laguna v. United States, 60 Fed. Cl. 133, 135-36 (2004)). The United States District Court for the Northern District of Indiana has described preservation orders as "'injunctive remed[ies]'" that are only appropriate "upon an adequate showing that equitable relief is warranted.'" Chandler v. Buncich, No. 12-cv-175, 2012 WL 4343314, *2 (N.D. Ind. Sept. 22, 2012) (quoting In re African-American Slave Descendants'

11

Litig., No. 02-cv-2264, 2003 WL 24085346, *2 (N.D. Ill. July 15, 2003)). The Chandler court went on to note that "'[i]n making this determination, the court considers: 1) whether [the movant] can demonstrate that [the non-movant] will destroy necessary documentation without a preservation order; 2) whether [the movant] will suffer irreparable harm if a preservation order is not entered; and 3) the burden imposed upon the parties by granting a preservation order.'" Id. (quoting In re African-American Slave Descendants' Litig., 2003 WL 24085346 at *2). As noted above, the common theme running through each of these tests is that the party seeking a preservation order must make an affirmative showing establishing that the order is necessary.

This Court finds that the Capricorn Power court's three-factor test strikes an appropriate balance in that it requires the moving party to establish the need for a preservation order but also maintains the level of judicial discretion and flexibility necessary for effective case management. Indeed, the Court notes that one Judge in this District previously applied that test in resolving a motion to preserve documents and other information. LaSala v. Marfin Popular Bank Pub. Co., No. 09-cv-968 (JAP), 2009 WL 2449902, at *2 (D.N.J. Aug. 7, 2009) (Arpert, U.S.M.J.). Here, the Court's application of the Capricorn Power test is straightforward, as Plaintiffs have not made a sufficient showing regarding why a preservation order is necessary in this case. Plaintiffs have not presented any facts that would give the Court concern "for the continuing existence and maintenance of the integrity of the evidence in question,"[2] Capricorn Power, 220 F.R.D. at 433, or

---

[2] Plaintiffs simply articulate their "fear" that "[a]bsent the immediate entry of [their proposed order] . . . it may be too late to stop the destruction of evidence that could easily have been preserved had the parties discussed the issue." (Pls.' June 8, 2016 Letter at 2, ECF No. 178). Plaintiffs do not identify any basis for their concern.

12

that they might face some irreparable harm in the event the Court declines to enter a preservation order. <u>Id.</u>  Indeed, the Court notes that Judge Linares has <u>already</u> Ordered both parties to "take reasonable steps to preserve all evidence that may be relevant to this litigation." (Feb. 16, 2016 Order at 5, ECF No. 2).  Plaintiffs have not addressed why another, more detailed order is necessary at this point. As Plaintiffs have not met their burden, their application for a preservation order is **DENIED WITHOUT PREJUDICE**.

While the record for this matter cannot currently justify the entry of a detailed preservation order, the Court believes that a protocol that sets forth the litigants' preservation obligations would benefit all parties.  The Court will therefore Order the parties to meet and confer in good faith regarding the preparation of an appropriate preservation protocol (not Order) for this matter.  The Court reminds the parties that, regardless of whether they are, in fact, able to create a mutually agreeable protocol or whether the Court enters a preservation Order at some later date, the parties are already subject to an existing, affirmative obligation to preserve relevant information, in accordance with both Judge Linares's February 16, 2016 Order and governing case law. <u>See, e.g.</u>, <u>Nissan World, LLC v. Mkt. Scan Info. Sys.</u>, No. 05-cv-2839 (MAH), 2014 U.S. Dist. LEXIS 59902, *62, n. 10 (D.N.J. Apr. 30, 2014) ("A litigant is 'under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation'") (quoting <u>Scott v. IBM Corp.</u>, 196 F.R.D. 233, 249 (D.N.J. 2000)).  To the extent any party discards, destroys or otherwise loses such information, it acts at its own peril.

13

## IV.  CONCLUSION

Based on the foregoing, it is on this 5th day of July, 2016,

**ORDERED** that, on or before July 15, 2016, all Defendants (other than Defendants Steppig and Opalewski), shall provide Plaintiffs' lead counsel with a copy of their Government Productions, if any; and it is further

**ORDERED** that Plaintiffs' informal request that the Court Order a partial stay of discovery in this matter (in a form agreed by Plaintiffs and the DOJ), (ECF No. 167), is **DENIED**; and it is further

**ORDERED** that all discovery, other than certain Defendants' provision of a copy of their Government Productions to Plaintiffs' lead counsel, is hereby stayed pending further Order of the Court; and it is further

**ORDERED** that Defendants Steppig and Opalewski's Motion to Stay, (ECF No. 152), is **GRANTED IN PART AND DENIED IN PART**. This civil litigation is completely stayed as to Defendants Steppig and Opalewski through and including March 31, 2017. Prior to the expiration of the stay, the parties shall meet and confer to discuss whether the stay should continue, and Defendants Steppig and Opalewski may make an application, whether on consent or otherwise, to continue the stay. If the parallel criminal proceeding against them should resolve prior to March 31, 2017, Defendants Steppig and Opalewski shall so advise the Court. Any party shall have the right to make an application to terminate or modify the stay; and it is further

**ORDERED** that Plaintiffs' informal request that the Court enter a discovery preservation order in this matter, (ECF No. 178), is **DENIED WITHOUT PREJUDICE**; and it is further

14

**ORDERED** that the parties shall meet and confer in an attempt to reach a mutually agreeable protocol for the preservation of potentially relevant information.

**SO ORDERED**

**JOSEPH A. DICKSON, U.S.M.J.**

cc:    Hon. Jose L. Linares, U.S.D.J.

15

# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

### COUNSELLORS AT LAW

CHARLES C. CARELLA
BRENDAN T. BYRNE
PETER G. STEWART
JAN ALAN BRODY
JOHN M. AGNELLO
CHARLES M. CARELLA
JAMES E. CECCHI

JAMES D. CECCHI (1933-1995)
JOHN G. GILFILLAN III (1936-2008)
ELLIOT M. OLSTEIN (1939-2014)

JAMES T. BYERS
DONALD F. MICELI
A. RICHARD ROSS
CARL R. WOODWARD, III
MELISSA E. FLAX
DAVID G. GILFILLAN
G. GLENNON TROUBLEFIELD
BRIAN H. FENLON
LINDSEY H. TAYLOR
CAROLINE F. BARTLETT

**5 BECKER FARM ROAD**
**ROSELAND, N.J. 07068-1739**
**PHONE (973) 994-1700**
**FAX (973) 994-1744**
**www.carellabyrne.com**

FRANCIS C. HAND
AVRAM S. EULE
RAYMOND W. FISHER
CHRISTOPHER H. WESTRICK*

OF COUNSEL
_____
*CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A CIVIL TRIAL ATTORNEY

RAYMOND J. LILLIE
WILLIAM SQUIRE
ALAN J. GRANT*
STEPHEN R. DANEK
DONALD A. ECKLUND
MEGAN A. NATALE
ZACHARY S. BOWER+
MICHAEL CROSS
CHRISTOPHER J. BUGGY
JOHN V. KELLY III
*MEMBER NY BAR ONLY
+MEMBER FL BAR ONLY

July 12, 2016

**Via ECF**

Honorable Joseph A. Dickson
United States Magistrate Judge
Martin Luther King Federal Building
50 Walnut Street
Newark, NJ 07102

> **RE:** *Liquid Aluminum Sulfate Antitrust Litigation*
> **Civil Action No. 16-md-2687(JLL)(JAD)**
> **MDL No. 2687**

Dear Judge Dickson:

This firm is Lead Counsel on behalf of Plaintiffs in the above-referenced multidistrict litigation. As a follow-up to our July 11 letter requesting an extension of time to file an amended complaint, Plaintiffs and the corporate Defendants have reached an agreement relating to an extension of time.

The corporate Defendants will serve their Government Productions so as to be received by the close of business, Eastern Daylight Time, on July 15, 2016 and Plaintiffs will have until August 22, 2016 to file their consolidated amended complaint. If this is acceptable to the Court, Plaintiffs respectfully request that the Court "So Order" this letter and have a "filed" copy returned to us via the Court's ECF system.

Thank you for your attention to this matter. If the Court has any questions, we are available at your convenience.

Respectfully submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.

/s/ James E. Cecchi

JAMES E. CECCHI

cc:  All counsel (via ECF)

**SO ORDERED**

s/Joseph A. Dickson
Joseph A. Dickson, U.S.M.J.
Date: 7/13/16



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KING DRUG COMPANY OF FLORENCE, INC., et al., | CIVIL ACTION |
| Plaintiffs, | |
| v. | No. 2:06-cv-1797 |
| CEPHALON, INC., et al., Defendants. | |
| | |
| VISTA HEALTHPLAN, INC., et al., Plaintiffs, | CIVIL ACTION |
| v. | No. 2:06-cv-1833 |
| CEPHALON, INC., et al., Defendants. | |
| | |
| APOTEX, INC., Plaintiff, | CIVIL ACTION |
| v. | No. 2:06-cv-2768 |
| CEPHALON, INC., et al., Defendants. | |
| | |
| FEDERAL TRADE COMMISSION, Plaintiff, | CIVIL ACTION |
| v. | No. 2:08-cv-2141 |
| CEPHALON, INC., Defendant. | |

FILED

SEP 24 2009

MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

## ORDER

**AND NOW**, this 24th day of September, 2009, upon consideration of the parties' proposed coordination orders and other submissions regarding discovery, and recognizing that the King Drug Direct Purchaser Class Action Litigation, Vista Healthplan End-Payor Class Action Litigation, Apotex Litigation and FTC Litigation (hereinafter referred to as "Related Cases"), involve overlapping Defendants and issues, it is hereby **ORDERED** that:

1. On or before October 23, 2009, each Defendant will provide to Liaison and Lead Counsel for the King Drug Direct Purchaser Class Plaintiffs, Liaison and Lead Counsel for the Vista Healthplan End-Payor Class Plaintiffs, counsel for the Individual Direct Purchaser and End-Payor Plaintiffs, and counsel for Apotex, all materials previously provided by that Defendant to the Federal Trade Commission (hereinafter referred to as "FTC"), whether informally or in response to subpoenas or other formal process, as well as all transcripts and exhibits to transcripts from any examinations taken by the FTC;

2. On or before October 23, 2009, consistent with all applicable rules and regulations, including but not limited to Commission Rule 4.10(g), the FTC will provide to Liaison and Lead Counsel for the King Drug Direct Purchaser Class Plaintiffs, Liaison and Lead Counsel for the Vista Healthplan End-Payor Class Plaintiffs, counsel for the Individual Direct Purchaser and End-Payor Plaintiffs, counsel for Apotex, and all defense counsel all documents previously produced by parties other than any Defendants in the Related Cases (i.e., third-party documents) in connection with the FTC pre-complaint investigation in FTC File No. 0610182;

3. On or before October 23, 2009, each Defendant will provide to Liaison and Lead

Counsel for the King Drug Direct Purchaser Class Plaintiffs, Liaison and Lead Counsel for the Vista Healthplan End-Payor Class Plaintiffs, counsel for the Individual Direct Purchaser and End-Payor Plaintiffs, counsel for Apotex, and counsel for the FTC, all materials previously produced by that Defendant, as well as all transcripts and exhibits to transcripts from any examinations taken by that Defendant, in *Cephalon, Inc. v. Mylan Pharmaceuticals, Inc., et al.*, C.A. No. 03-1394(JCL) (D.N.J.);

4.  No documents shall be produced in redacted or altered form, unless the Court approves such an alteration or redaction after a hearing. This hearing may be requested by way of motion, not to exceed five (5) pages;

5.  All discovery produced pursuant to this Order is subject to the September 11, 2009, Protective Order entered in the Related Cases; and

6.  All other discovery is stayed pending a discovery conference to be held after the Court has ruled on the motions to dismiss in the Related Cases.

BY THE COURT:

MITCHELL S. GOLDBERG, J.

ENTERED

SEP 2 4 2009

CLERK OF COURT

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re NIASPAN ANTITRUST LITIGATION** | **MDL No. 2460** |
| | **2:13-md-2460 JD** |
| **THIS DOCUMENT RELATES TO:** | |
| **All Actions** | |

## [~~PROPOSED~~] CASE MANAGEMENT ORDER NO. 2:
## INITIAL DISCOVERY

AND NOW, this 18 day of February, 2014, following the initial status conference held on January 29, 2014 and consistent with this Court's Case Management Order No. 1, IT IS ORDERED that, prior to the Court's decision on the motion to dismiss filed by Defendants on March 17, 2014, the parties provide discovery only as specified below:

### A.    Initial Document Discovery

### 1.    Production by Defendants

To the extent reasonably available to Defendants, one copy of the following:

   a.    The unredacted settlement agreements entered into between Kos (and/or its successors) and Barr (and/or its successors) relating to the patent infringement actions in the Southern District of New York concerning Niaspan as alleged in the complaints, including the April 2005 Settlement and License Agreement, Co-Promotion Agreement, and License and Manufacturing Agreement (the "Agreements"), and any amendments or supplements thereto. These documents shall be produced within ten (10) days of the entry of a protective order in this matter.

   b.    The unredacted settlement agreements entered into by Abbott Laboratories or

22834700.1

1

AbbVie Inc. with any potential manufacturer of a generic Niaspan to resolve patent infringement litigation involving Niaspan as alleged in the complaints, as well as any amendments or supplements thereto. These documents shall be produced by the later of March 28, 2014, or twenty (20) days following the entry of a protective order in this matter absent any objection filed with the Court by a counter-party to those agreements.

c.  The New Drug Application(s) ("NDAs") for Niaspan, any supplement(s) thereto, and any correspondence with the FDA in conjunction with obtaining approval of the NDA(s) that are contained in the formal NDA file. These documents shall be produced by the later of April 18, 2014, or thirty (30) days following the entry of a protective order in this matter.

d.  The Abbreviated New Drug Application(s) ("ANDAs") filed by Barr (and/or its successors) for generic Niaspan, any supplement(s) thereto, and any correspondence with the FDA in conjunction with obtaining approvals of those ANDA(s) that are contained in the formal ANDA file. These documents shall be produced by the later of April 18, 2014, or thirty (30) days following the entry of a protective order in this matter.

e.  Each court pleading, court hearing transcript, order, discovery request and response, expert report and exhibits thereto, deposition transcript and exhibits thereto from the patent infringement actions concerning Niaspan brought by Kos (and/or its successors) against Barr (and/or its successor) to the extent such documents are reasonably available and not publicly available. These documents shall be produced by the later of April 30, 2014, or forty-five (45) days following the entry of a protective order in this matter.

f.  Defendants' electronic transaction-level data for sales of Niaspan and generic Niaspan as kept in the ordinary course of business and reasonably available, sufficient to show, by customer, invoiced sales (including, if reasonably available and sortable, the invoice number, date of sale, units sold, unit price, total price, billing type, customer bill-to and ship-to addresses, NDC number, and keys to billing types and NDC numbers, including package size), as well as concurrent or subsequent credits and discounts (including, if reasonably available and sortable, chargebacks, except as discussed in section A.1.f.2 below, and adjustments for prompt payment or returns) from March 1, 2007 to December 31, 2013 by the later of May 23, 2014, or sixty (60) days following the entry of a protective order in this matter.

1.  Defendants Abbott/AbbVie will conduct a diligent inquiry into the existence of the categories of data specified above for the period April 27, 2005 through February 28, 2007, and inform Plaintiffs by March 12, 2014 of the results of that inquiry. The parties shall meet-and-confer by March 26, 2014 to further discuss this issue if any such data for that period has been located.

22834700.1

2

  2. Defendants Abbott/AbbVie currently understand that data relating to chargebacks is not available for the period prior to September 1, 2010, and thus no production of such data is expected.

**2. Production by Direct Purchaser Plaintiffs**

To the extent reasonably available to Direct Purchaser Plaintiffs, one copy of the

following:

  a. Direct Purchaser Plaintiffs' electronic transaction-level purchase and chargeback data as kept in the ordinary course of business and reasonably available showing direct purchases of Niaspan and generic Niaspan from April 27, 2005 to December 31, 2013. These documents shall be produced by the later of March 28, 2014, or twenty (20) days following the entry of a protective order in this matter. Data will be provided for each Direct Purchaser Plaintiff and the corresponding portion of any entity which the Direct Purchaser Plaintiff asserts has assigned its claim to a Direct Purchaser Plaintiff in this matter. The produced data will show, to the extent reasonably available, the customer name, purchase date, transaction type, units purchased, unit price, total price, net units, net price, NDC code, all chargeback information, returns, and any concurrent or subsequent rebates, discounts, or other financial payments affecting the net price.

**3. Production by End Payor Plaintiffs**

To the extent reasonably available to End Payor Plaintiffs, one copy of the following:

  a. End Payor Plaintiffs' electronic transaction-level data as kept in the ordinary course of business and reasonably available showing purchases of Niaspan and generic Niaspan from April 27, 2005 to December 31, 2013. These documents shall be produced by the later of March 28, 2014, or twenty (20) days following the entry of a protective order in this matter. The produced data will show, to the extent reasonably available and sortable, purchase date, units purchased, unit price, total price, net units, net price, NDC code, and any concurrent or subsequent rebates, discounts, or other financial payments affecting the net price.

  b. Unredacted copies of any contracts between End Payor Plaintiffs and pharmacy benefits managers that governed the price paid by the End Payor Plaintiffs for all relevant purchases of Niaspan or generic Niaspan by the later of March 28, 2014, or thirty (30) days following the entry of a protective order in this matter absent any objection filed with the Court by the counter-party to those contracts.

**B. Initial Witness Disclosures**

The parties are relieved from any obligation to make initial disclosures pursuant to Rule

22834700.1

3

26(a)(1)(A), except that the parties shall provide initial witness disclosures pursuant to Rule

26(a)(1)(A)(i) no later than June 20, 2014.

**BY THE COURT:**

**JAN E. DUBOIS, J.**

JOHN J. FRANCIS, JR.
**DRINKER, BIDDLE & SHANLEY LLP**
A Pennsylvania Limited Liability Partnership
500 Campus Drive
Florham Park, NY 07932
Tel: (973) 360-1100
Fax: (973) 360-9831

*Attorneys for Defendants*
*Pfizer Inc. and Warner-Lambert Co.*

LISA J. RODRIGUEZ
**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
3 King Highway East
Haddonfield, NJ 08033
Tel: (856) 795-9002
Fax: (856) 795-9887

*Attorneys for Plaintiff Action Alliance of Senior*
*Citizens of Greater Philadelphia*

JOHNATHAN D. CLEMENTE
**CLEMENTE, MUELLER & TOBIA, P.A.**
218 Ridgedale Avenue
Cedar Knolls, NJ 07927
Tel: (973) 455-8008
Fax: (973) 455-8118

*Attorneys for Plaintiff Louisiana Wholesale Drug Co., Inc*

**FILED**

OCT 29 2002

AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

**ENTERED**
ON
THE DOCKET

NOV 1 2002

WILLIAM T. WALSH, CLERK
By _____
(Deputy Clerk)

02-CV-1390(JCL)

# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE NEURONTIN ANTITRUST LITIGATION | ) ) ) | MDL Docket No. 1479 |
| | | **ORDER** |
| OWENS v. PFIZER INC. | ) ) ) | Civil Action No. 02-1390(JCL) |
| TRUJILLO v. PFIZER INC. | ) ) ) | Civil Action No. 02-1391(JCL) |

| | | |
|---|---|---|
| SMITHFIELD FOODS, INC. v. PFIZER INC. | ) ) ) | Civil Action No. 02-1397(JCL) |
| SALOWE-KAYE v. PFIZER INC. | ) ) ) | Civil Action No. 02-1527(JCL) |
| LOUISIANA WHOLESALE DRUG COMPANY, INC. v. PFIZER INC. | ) ) ) ) | Civil Action No. 02-1830(JCL) |
| MEIJER, INC. v. PFIZER INC. | ) ) ) | Civil Action No. 02-2731(JCL) |
| ZAFARANA v. PFIZER INC. | ) ) ) | Civil Action No. 02-2741(JCL) |
| COLLINS v. PFIZER INC. | ) ) ) | Civil Action No. 02-3514(JCL) |
| SALL, ET AL v. PFIZER INC. | ) ) ) | Civil Action No. 02-3988(JCL) |
| GREAT LAKES HEALTH PLAN v. PFIZER INC. | ) ) ) | Civil Action No. 02-3989(JCL) |
| MELTZER v. PFIZER INC. | ) ) ) | Civil Action No. 02-3990(JCL) |
| HEALTH & BENEFIT TRUST FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL UNION 94, 94A, 94B v. PFIZER INC. | ) ) ) ) ) ) | Civil Action No. 02-3991(JCL) |
| JAFFE v. PFIZER INC. | ) ) ) | Civil Action No. 02-3992(JCL) |
| D'ANGELO v. PFIZER INC. | ) ) ) | Civil Action No. 02-3993(JCL) |
| ACTION ALLIANCE OF SENIOR CITIZENS OF GREATER PHILADELPHIA v. PFIZER INC. | ) ) ) ) | Civil Action No. 02-3994(JCL) |

| | |
|---|---|
| VISTA HEALTHPLAN, INC. v. PFIZER INC. | Civil Action No. 02-3995(JCL) |
| UNITED FOOD & COMMERCIAL WORKERS LOCAL 56 HEALTH & WELFARE FUND v. PFIZER INC. | Civil Action No. 02-3996(JCL) |
| PAINTERS DISTRICT COUNCIL NO. 30 HEALTH & WELFARE FUND v. PFIZER INC. | Civil Action No. 02-3997(JCL) |
| WILSON v. PFIZER INC. | Civil Action No. 02-3998(JCL) |
| SOEURT v. PFIZER INC. | Civil Action No. 02-3999 (JCL) |

WHEREAS, the above-captioned actions were either filed in this Court or transferred to this Court by the Judicial Panel on Multidistrict Litigation where the action was captioned *In re Neurontin Antitrust Litigation* (the "Actions");

WHEREAS the Actions were brought by either alleged direct purchasers or alleged indirect purchasers of the brand name prescription drug Neurontin®;

WHEREAS, the Actions filed by the direct purchasers are titled: *Louisiana Wholesale Drug Company, Inc. v. Pfizer, Inc.*, Civil Action No. 02-1830 (JCL) and *Meijer, Inc. v. Pfizer, Inc.*, Civil Action No. 02-2731 (JCL) (the "Direct Purchaser Actions");

WHEREAS, the Actions filed by indirect purchasers are set forth as Exhibit A hereto (the "Indirect Purchaser Actions");

WHEREAS, on August 27, 2002, the defendants filed a motion to stay the Actions pending resolution of certain patent infringement litigations (the "Motion");

WHEREAS, responses to the Motion were filed by the: (a) plaintiffs in the Direct Purchaser Actions; (b) plaintiffs in thirteen of the Indirect Purchaser Actions; and (c) plaintiffs in five of the Indirect Purchaser Actions (the "Responses");

WHEREAS, the defendants filed a reply to the Responses; and

WHEREAS, this Court held a hearing on the Motion on September 23, 2002;

THIS MATTER having come before the Court, and the Court having considered the papers and heard argument and for good cause shown, it is on this 23 day of October, 2002 ordered, that:

1.  Except to the extent set forth below, the Actions shall be stayed until the resolution by the United States District Court for the District of New Jersey of the motions for summary judgment currently served, filed or pending before the Honorable John C. Lifland in the actions listed as Exhibit B to this Order (the "Patent Litigations").

2.  Notwithstanding the preceding paragraph, this Order shall not be construed to stay proceedings with respect to the remand motions filed in *Zafarana v. Pfizer, Inc.*, Civil Action No. 02-2741 (JCL) and *Sall v. Pfizer, Inc.*, Civil Action No. 02-3988 (JCL) ("*Sall*") (the "Remand Motions").

3.  With respect to the Remand Motions, defendants shall serve their opposition in *Sall* on or before October 11, 2002 and plaintiffs in *Sall* shall serve their reply on or before October 25, 2002.

4.  Notwithstanding the stay provided in ¶1 above, defendants shall make available to the plaintiffs all past and future pleadings, motions, briefs, affidavits, exhibits and any other material filed with the Court, and all responses to discovery, including responses to interrogatories, document requests, deposition transcripts, requests to admit, and all documents

4

produced by any party to any of the Patent Litigations, within 45 days following the entry of a confidentiality order (as discussed in Paragraphs 5 and 6 below) with respect to those pleadings and documents. To the extent the documents are available in electronic form they are to be made available to the plaintiffs in that form. Plaintiffs shall bear the costs of duplication of the pleadings and documents or the electronic media on which the documents are available.

5. The parties to the Actions shall meet and attempt to confer in good faith among themselves and with the parties to the Patent Litigations to negotiate an appropriate confidentiality order. The parties shall endeavor to submit a proposed confidentiality order to the Court on or before November 7, 2002. In addition, the parties shall confer in good faith regarding how and to what extent discovery produced by non-parties to any of the Patent Litigations, and materials filed or produced in the action styled *Warner-Lambert Co. v. Apotex Corp., et al* (N.D. Ill. Civil Action No. 98-CV-4293) may be provided to the plaintiffs consistent with the protective orders entered in those actions.

6. If the parties to the Actions and the parties to the Patent Litigations are unable to agree on a confidentiality order by November 7, 2002, designated counsel (as listed in paragraph 8 below) are to notify the Court of that fact, and a hearing with respect to a confidentiality order will be scheduled.

7. Notwithstanding the stay provided in ¶1 above, the parties to the Actions shall meet and attempt to confer in good faith among themselves to negotiate the terms of one or more case management orders. If the parties cannot agree on the terms of one or more case management orders, any party may apply to the Court for a hearing to consider any unresolved issue.

8.   Pending the entry of a case management order (or case management orders), for the purposes of this Order and service of papers in the Actions, service shall be made by overnight or hand delivery on the following:

For Defendants:              Myron Kirschbaum, Esq.
                             Stephen Elliott, Esq.
                             Kaye Scholer, LLP
                             425 Park Avenue
                             New York, NY 10022-3598
                             (212) 836-8000
                             (212) 836-8689 – fax

                             -and-

                             John J. Francis, Jr., Esq.
                             Bruce L. Shapiro, Esq.
                             Drinker, Biddle & Shanley LLP
                             500 Campus Drive
                             Florham Park, NJ 07932
                             (973) 360-1100
                             (973) 360-9831 – fax

For the Direct Purchasers:   Bruce E. Gerstein, Esq.
                             Stephen H. Schwartz, Esq.
                             Garwin, Bronzaft, Gerstein
                             & Fisher LLP
                             1501 Broadway
                             New York, NY 10036
                             (212) 398-0055
                             (212) 764-6620 – fax

                             -and-

                             Robert N. Kaplan, Esq.
                             Richard J. Kilsheimer, Esq.
                             Kaplan Fox & Kilsheimer LLP
                             805 Third Avenue
                             New York, NY 10022
                             (212) 687-1980
                             (212) 687-7714 – fax

For the Indirect Purchasers:   Robert S. Schachter, Esq.
Joseph S. Tusa, Esq.
Zwerling, Schachter & Zwerling, LLP
767 Third Avenue
New York, NY 10017
(212) 223-3900
(212) 371-5969 – fax

-and-
J. Douglas Richards, Esq.
Michael M. Buchman, Esq.
Milberg Weiss Bershad Hynes
& Lerach, LLP
One Pennsylvania Plaza
New York, NY 10119-0165
(212) 594-5300
(212) 868-1229 – fax

9.    Pursuant to Rule 15 of the Federal Rules of Civil Procedure, within 30 days after the expiration of the stay of the Actions described in ¶1 above, plaintiffs in the Indirect Purchaser Actions and the Direct Purchaser actions may (together or separately) each file an amended complaint.

10.    The time within which defendants shall answer or otherwise move or respond with respect to the extant complaints in the Actions or any amended complaints filed pursuant to paragraph 9 hereto, is extended until 60 days after the expiration of the stay of the Actions described in ¶1 above.

STANLEY R. CHESLER, U.S.M.J.

7

# EXHIBIT A

*Owens v. Pfizer, Inc. and Warner-Lambert Co.,*
     Civil Action No. 02-1390 (JCL)

*Trujillo v. Pfizer Inc. and Warner-Lambert Co.,*
     Civil Action No. 02-1391(JCL)

*Smithfield Foods, Inc. v. Pfizer Inc. and Warner-Lambert Co.,*
     Civil Action No. 02-1397(JCL)

*Salowe-Kaye v. Pfizer Inc. and Warner-Lambert Co.,*
     Civil Action No. 02-1527(JCL

*Zafarana v. Pfizer Inc. and Warner-Lambert Co.,*
     Civil Action No. 02-2741(JCL)

*Collins v. Pfizer Inc. and Warner-Lambert Co.,*
     Civil Action No. 02-3514(JCL)

*Sall, et al v. Pfizer Inc. and Warner-Lambert Co.,*
     Civil Action No. 02-3988(JCL)

*Great Lakes Health Plan V. Pfizer Inc. and Warner-Lambert Co.,*
     Civil Action No. 02-3989(JCL)

*Meltzer V. Pfizer Inc. and Warner-Lambert Co.,*
     Civil Action No. 02-3990(JCL)

*Health & Benefit Trust Fund of The International Union
of Operating Engineers Local Union 94, 94a, 94b V. Pfizer Inc.
and Warner-Lambert Co.,*
     Civil Action No. 02-3991(JCL)

*Jaffe V. Pfizer Inc. and Warner-Lambert Co.,*
     Civil Action No. 02-3992(JCL)

*D'angelo v. Pfizer Inc. and Warner-Lambert Co.,*
     Civil Action No. 02-3993(JCL)

*Action Alliance of Senior Citizens of
Greater Philadelphia v. Pfizer Inc. and Warner-Lambert Co.,*
     Civil Action No. 02-3994(JCL)

## EXHIBIT A

*Vista Healthplan, Inc. v. Pfizer Inc. and Warner-Lambert Co.,*
Civil Action No. 02-3995(JCL)

*United Food & Commercial Workers*
*Local 56 Health & Welfare Fund v. Pfizer Inc. and Warner-Lambert Co.,*
Civil Action No. 02-3996(JCL)

*Painters District Council No. 30 Health*
*& Welfare Fund v. Pfizer Inc. and Warner-Lambert Co.,*
Civil Action No. 02-3997(JCL)

*Wilson v. Pfizer Inc. and Warner-Lambert Co.,*
Civil Action No. 02-3998(JCL)

*Soeurt v. Pfizer Inc. and Warner-Lambert Co.,*
Civil Action No. 02-3999 (JCL)

# EXHIBIT B

*In re Gabapentin Patent Litigation*
MDL Docket No. 1384

*Warner-Lambert Company v. Purepac Pharmaceutical Co. and Faulding, Inc.*
Civil Action No. 00-2931 (JCL) (Gabapentin)

*Pfizer, Inc. v. Purepac Pharmaceutical Co. & Faulding Inc.*
Civil Action No. 00-3522(JCL) (Gabapentin)

*Warner-Lambert Co. v. Apotex Corp., et al.*
Civil Action o. 01-611(JCL)

*Warner-Lambert Company v. Purepac Pharmaceutical Co. and Faulding, Inc.*
Civil Action No. 98-2749 (JCL)

*Warner-Lambert Company v. Purepac Pharmaceutical Co. and Faulding, Inc.*
Civil Action No. 99-5948 (JCL)

*Warner-Lambert Company, Pfizer v. Teva Pharmaceutical Co.*
Civil Action No. 00-4168(JCL) (Gabapentin)

*Warner-Lambert Company, Pfizer v. Teva Pharmaceutical Co.*
Civil Action No. 00-4589(JCL) (Gabapentin)

*Warner-Lambert Company, Pfizer v. Zenith Goldline Laboratories*
Civil Action No. 00-6073(JCL) (Gabapentin)

*Warner-Lambert Company, Pfizer v. Zenith Goldline Laboratories*
Civil Action No. 01-0193(JCL) (Gabapentin)

*Warner-Lambert Company, Pfizer v. Zenith Goldline Laboratories*
Civil Action No. 01-0577(JCL) (Gabapentin)

*Warner-Lambert Company, Pfizer v. Zenith Goldline Laboratories*
Civil Action No. 01-1537(JCL) (Gabapentin)

*Warner-Lambert Company, Pfizer v. Zenith Goldline Laboratories*
Civil Action No. 01-1538(JCL) (Gabapentin)

*Warner-Lambert Company, Pfizer v. Eon Lab Manufacturing, Inc.*
Civil Action No. 01-2194(JCL) (Gabapentin)